CARL D. BLACKWELDER, JR. AND WIFE, FANNIE B. BLACKWELDER v. HOLYOKE MUTUAL FIRE INSURANCE COMPANY IN SALEM, MASSACHUSETTS

No. 7119SC110

(Filed 31 March 1971)

1. Insurance § 140— action on homeowner's policy — wind damage to shed — appurtenant private structure — sufficiency of homeowner's evidence

In a homeowner's action to recover for a wind-damaged shed under the terms of a homeowner's policy insuring his dwelling and "appurtenant private structures," the homeowner's testimony that the shed was located on his land about 400 feet from the dwelling and was used primarily for the storage of garden and lawn tools, *held* sufficient to support a jury finding that the shed was an "appurtenant private structure" within the meaning of the policy, notwithstanding there was other evidence that the maintenance and use of the shed was unrelated to the dwelling.

---

Blackwelder v. Insurance Co.

---

2. **Insurance § 139— construction of homeowner's policy — "appurtenant private structure"**

   The term "appurtenant private structure" as used in a homeowner's policy requires the structure in question to be incident to the main insured building and necessarily connected with its use and enjoyment.

3. **Insurance § 139— construction of homeowner's policy — status of damaged dwelling**

   The status of a shed at the time of its damage by wind determines whether or not the shed is an "appurtenant private structure" within the meaning of a homeowner's policy.

4. **Insurance §§ 6, 139— construction of policy — ambiguous terms**

   If the word "premises" in a homeowner's policy is subject to two different constructions, the court must adopt the construction most favorable to the policyholder.

5. **Insurance § 139— construction of homeowner's policy — "premises" defined — shed adjacent to insured dwelling**

   The word "premises" as used in a homeowner's policy was sufficiently broad to encompass a shed that was located about 400 feet from the insured dwelling and on the same tract of land.

APPEAL by plaintiffs from *Gambill, Superior Court Judge,* 7 September 1970 Session of CABARRUS County Superior Court.

Civil action to recover $3,000 for wind damage to a shed under the terms of a homeowner's insurance policy issued by defendant and insuring plaintiffs against loss or damage to their dwelling and appurtenant private structures occasioned by fire, windstorm or other enumerated perils.

At the close of plaintiffs' evidence the court allowed defendant's motion for a directed verdict, stating as grounds therefor that, "as a matter of law, the structure which was the subject matter of the law suit in question was not an appurtenant private structure within the . . . provisions of the insurance policy. . . . " Plaintiffs appealed.

*Williams, Willeford & Boger by John Hugh Williams for plaintiff appellants.*

*Ervin, Burroughs & Kornfeld by Robert M. Burroughs and John C. MacNeill, Jr. for defendant appellee.*

GRAHAM, Judge.

[1]  The sole question presented is whether the policy of insurance issued by defendant failed, as a matter of law, to provide coverage to the plaintiffs' shed.

On the first page of the printed policy form the following appears: "Named Insured and P. O. Address." Typed immediately thereunder are plaintiffs' names and the address, Route 1, Box 249, Concord, Cabarrus, N. C. 28025. The printed form further provides: "The described premises covered hereunder are located at the above address, unless otherwise stated herein." Thereafter follows the description, "[o]n Roberta Road, 3 miles West of Concord, Cabarrus, N. C."

Coverage and limits of liability as designated in Section 1 of the policy include: "A. Dwelling $30,000. B. Appurtenant Private Structures $3,000."

With respect to coverage B, the printed policy states:

"COVERAGE B—APPURTENANT PRIVATE STRUCTURES.

This policy covers *private structures appertaining to the premises and located thereon,* including materials and supplies located on the premises or adjacent thereto, intended for use in construction, alteration or repair of such structures. This coverage does not include: (a) any structure used in whole or in part for commercial, manufacturing or farming purposes; or (b) any structures (except structures used principally for private garage purposes) which are wholly rented or leased to other than a tenant of the described dwelling." (Emphasis added).

Plaintiffs' evidence, including certain stipulations, tended to show the following: The policy of insurance was issued on 12 March 1968 and was in effect on 29 June 1969 when the shed was damaged by wind. On 29 June 1969, plaintiffs were the owners of a 250-acre tract of land in Cabarrus County. They resided in a brick residence built on the property in 1967. For twenty-three years prior to moving into the brick residence, plaintiffs lived in a frame dwelling which was also located on the property. The shed, which is the subject of this action, was located about 200 feet from the old frame dwelling and about 400 feet from the new residence. Other buildings located on the 250-acre tract consisted of a shop, grain bin, barn,

chicken house and underground silo. All buildings, except the dwellings, had been constructed for use in dairying and farming. The male plaintiff ceased dairying and farming in 1964. He testified:

> "Prior to June 29, 1969, I was using the shed for my gardening tools, small tractor to mow my yard. There were a mowing machine, bush hog, and cultivators in there. There was no farming on my property at that time. I did not use any of the items in the shed for anything but my own use in the house. I did my gardening and the road banks. The garden was located right near the new house. There were a couple of junk automobiles in there which did not belong to me. There were other outbuildings, a barn, shop, and underground silo. None of those had been used since I stopped farming in 1964. The frame house was rented."

We are of the opinion, and so hold, that plaintiffs' evidence, when taken in the light most favorable to them, would permit a finding that the shed was a private structure appertaining to the premises within the meaning of the insurance policy.

We have found no cases arising in this State which define "appurtenant private structure" as that term is used in fire insurance policies. However, in the case of *Manufacturing Co. v. Gable*, 246 N.C. 1, 97 S.E. 2d 672, our Supreme Court considered the question of whether a heating system located in the basement of a building was an appurtenance to the lease of the second and third floors, within the meaning of a lease providing, "To HAVE AND TO HOLD the same, [second and third floors] with the privileges and appurtenances thereunto in anywise appertaining. . . . " In holding the heating system to be an appurtenance, the court quoted with approval the following from 32 Am. Jur., Landlord & Tenant, § 169:

> " 'It is a settled principle of the law of property that a conveyance of land, in the absence of anything in the deed indicating a contrary intention, carries with it everything properly appurtenant to, that is, essential or reasonably necessary to the full beneficial use and enjoyment of the property conveyed, and this principle is equally applicable to a lease of premises. In leases, as in deeds, "appurtenance" has a technical signification, and is employed for

the purpose of including any easements or servitudes used or enjoyed with the demised premises. When the term is thus used, in order to constitute an appurtenance, there must exist a propriety of relation between the principal or dominant subject and the accessory or adjunct, which is to be ascertained by considering whether they so agree in nature and quality as to be capable of union without incongruity. Moreover as in the case of conveyances, whatever easements and privileges legally appertain to the demised premises and are reasonably necessary to its enjoyment ordinarily pass by a lease of the premises without any additional words. Parol evidence is admissible to show the meaning of the term "appurtenances." ' "

The meaning of "appurtenance" adopted by our Supreme Court in the *Gable* case, is simliar to that generally attributed to the term. *Webster's Third New International Dictionary* defines an "appurtenance" as "1: an incidental property right or privilege (as to a right of way, a barn, or an orchard) belonging to a principal right and passing in possession with it 2: a subordinate part, adjunct, or accessory."

In *Beekman v. Schirmer*, 239 Mass. 265, 132 N.E. 45, the question before the court was whether a greenhouse was prohibited on a lot restricted by deed to use for a private dwelling house and appurtenances. The court stated: "We are . . . of opinion that 'appurtenances' should be construed . . . to mean that which might become necessarily connected with the full and free use and enjoyment of the dwelling house whether it took the form of a private stable, or a private garage, or a private greenhouse."

In *Brown v. Lehigh Valley R. Co.*, 108 Misc. 384, 177 N.Y.S. 618, we find the following:

"The thing appurtenant need not be one of necessity. It may be one of convenience only, but it must be connected in use with the principal thing. In other words, a thing is appurtenant to something else only when it stands in the relation of an incident to a principal, and is necessarily connected with the use and enjoyment of the latter."

According to the male plaintiff's testimony the shed was used primarily for the storage of tools and implements used in connection with the upkeep of his garden and yard. He stated

categorically, and without objection, that "I did not use any of the items in the shed for anything but my own use in the house." The ownership and maintenance of a mower, garden tractor, cultivator, and similar tools need not be considered consistent only with farming operations and may indeed be incidental to the use and enjoyment of a rural home. Nor can we say, as a matter of law, that the location within the shed of two old cars (as an accommodation to a third party), and some old fence posts and barbed wire, destroys the "appertaining to the premises" characteristic of the shed. It is not unusual for a homeowner to accumulate and store upon the premises implements formerly used in a business that has been abandoned as well as various items generally considered useless. In fact, many consider a nearby garage, barn or shed, for storage purposes, as an essential appendage to a home.

[2]  If the shed in question was an incident of the main insured building and necessarily connected with its use and enjoyment, it was a private appurtenant structure within the meaning of the insurance policy. However, its use is disputed by the defendant, and even plaintiffs' evidence would support a finding that the maintenance and use of the shed was unrelated to the main dwelling. The question of its status should therefore have been submitted to the jury under proper instructions.

[3]  It should be noted further that the shed's status at the time the loss occurred is controlling. The fact that it may have been constructed for use in farming operations does not mean that it could never be converted for use in connection with the private dwelling. The case of *Brust v. National Grange Fire Insurance Company,* 198 N.Y.S. 2d 348, 10 App. Div. 2d 737, is in point. There, a building originally constructed as a cider mill, had been used for three years prior to its destruction by fire for the storage of the dismantled cider mill equipment, a car, two trucks, certain household furnishings, camping equipment and woodcarving tools, which the testimony indicated were used only for private purposes. The building was located 160 feet from a dwelling house insured under a policy which also covered private structures appertaining to the described dwelling and located on the premises. The trial court held that the building did not appertain to the house within the meaning of the policy. In reversing, the Supreme Court, Appellate Division stated: "Despite the statement in the proof of loss it is clear

that the burned building was not being used as a cider mill. Although the plaintiffs admitted it could be reassembled in a week it had not been used to manufacture cider since 1952. . . . [T]his building which was located on the same premises as the dwelling house and used in connection with it, *e.g.*, as a garage and for storage, was a private structure appertaining to the dwelling house."

Defendant contends the judgment should stand for the reason that plaintiffs' evidence conclusively established that the shed was used, at least in part, for farming operations. (As pointed out previously, the policy expressly excludes buildings used, even in part, for farming purposes.) Plaintiffs' evidence was expressly to the contrary. The male plaintiff testified clearly that he had not engaged in farming or dairying since 1964; and also, that no farming was being conducted on the property at the time the shed was damaged.

Defendant's final contention is that the shed was not located on the premises as required by the policy.

In its brief defendant states:

"It would seem, in the situation at hand, that the word 'premises' is susceptible to at least two entirely different meanings. First of all, the word 'premises' might encompass the entire 250 acre tract of land of the plaintiffs. This would include land on which there are structures, land which is now idle but once was used for farming purposes, land which is now being subdivided by the plaintiffs for homesites, and land which contained the original frame dwelling house and its out buildings that supported the dairy operation. The word 'premises,' as used in the policy of insurance, could be construed to mean only the immediate area which is used by the plaintiffs for dwelling purposes, that is to say, that portion of the entire tract which contains a dwelling house, a yard, and which is used as the plaintiffs' residence."

[4] If, as defendant apparently concedes, "premises" as used in the policy of insurance is subject to two different constructions, we are bound to adopt the construction most favorable to plaintiffs. Where, as here, the insurance company has selected the words used in the policy, any ambiguity or uncertainty as to their meaning must be resolved in favor of the policyholder

and against the company. *Trust Co. v. Insurance Co.*, 276 N.C. 348, 172 S.E. 2d 518; *Williams v. Insurance Co.*, 269 N.C. 235, 152 S.E. 2d 102; *Insurance Co. v. Insurance Co.*, 266 N.C. 430, 146 S.E. 2d 410.

[5]    We are of the opinion, however, that whatever reasonable construction is applied, "premises" as used in the policy is sufficiently broad to encompass the property on which the shed was located. The 250 acres was a single undivided tract. It was located at the address given in the policy as the location of the "premises covered hereunder." While there was evidence that a portion of the 250 acres had been subdivided for residential lots, there was no evidence that that portion on which the shed was located had been severed. It remained a part of the tract on which the house was located. The meaning of "premises" as used in the policy is obviously not restricted to the principal dwelling, for if it were, the extended coverage of appurtenant structures would be of no value. Where then does the premises end? Defendant argues that it ends somewhere before it reaches the shed and suggests that it is limited to "that portion of the entire tract which contains a dwelling house, a yard, and which is used as the plaintiffs' residence." The record does not indicate whether plaintiffs' yard encompassed the portion of the property on which the shed was located. However, plaintiffs' evidence was that the shed was used in connection with the residence. It was located on the same tract of land and within a convenient distance from the residence. Under these circumstances, we think the limit of the "yard" not controlling.

In *Norfolk Dedham Mut. Fire Ins. Co. v. Hamilton*, 52 So. 2d 495 (Mississippi, 1951), a servant's quarters, located 1198 feet from the insured dwelling, but on the same 95-acre tract of land, was held to be an appurtenant structure. The shed here in question was only 400 feet, approximately, from the insured dwelling.

Defendant cites *Bowlin v. Fed. Mut. I. & H. Ins. Co.*, 210 Tenn. 205, 357 S.W. 2d 337. The structure there in question was a barn located across the street from the dwelling and on a separate tract of land. The court held that the barn was not located on the premises described in the policy, noting that to decide otherwise would mean that a barn used for storage by the owner of the insured dwelling, could be situated blocks away from the insured dwelling and still be covered by the policy.

The opinion makes it clear that the controlling feature in that case was the location of the barn on a completely separate tract of land. The case is therefore distinguishable from the case at hand.

Here the shed in question was on the same tract of land as the dwelling. A conveyance of the tract intact would have carried with it the shed as well as the house. The approximate 400-foot distance from the house to the shed was not so great as would prevent the shed's convenient use in connection with the use and enjoyment of the dwelling. Plaintiffs' evidence was that it was so used. Under these circumstances, we think the shed was clearly located on the premises within the meaning of the insurance policy.

Reversed.

Chief Judge MALLARD and Judge PARKER concur.