COASTAL READY-MIX CONCRETE CO., INC. v. BOARD OF COMMISSIONERS
OF THE TOWN OF NAGS HEAD, ET AL.

No. 93

(Filed 1 April 1980)

1. **Municipal Corporations § 31.2— decisions by municipal boards of commissioners—Administrative Procedures Act inapplicable**

    Decisions of any town boards of commissioners are exempted from the scope of review of the N. C. Administrative Procedure Act. G.S. 150A-2(1).

2. **Municipal Corporations § 31.2— conditional use permit—appeal from decision—scope of review**

    The task of a court reviewing a decision on an application for a conditional use permit made by a town board sitting as a quasi-judicial body includes reviewing the record for errors in law, insuring that procedures specified by law in both statute and ordinance are followed, insuring that appropriate due process rights of a petitioner are protected, including the right to offer evidence, cross-examine witnesses and inspect documents, insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and insuring that decisions are not arbitrary and capricious.

3. **Municipal Corporations § 30.6— concrete mixing bin—violation of height restrictions—conditional use permit properly denied**

    Respondent Board of Commissioners properly concluded that a proposed concrete mixing bin was a structure in and of itself, not a necessary mechanical appurtenance to a conveyor belt and therefore exempt from height restrictions of the town zoning ordinance, and the Board properly denied petitioner's application for a conditional use permit to allow it to build a concrete plant on the land in question because the proposed bin violated the height requirements of the ordinance.

ON respondents' petition for discretionary review, pursuant to G.S. 7A-31(a) of a decision of the Court of Appeals, 41 N.C. App. 557, 255 S.E. 2d 246 (1979), affirming judgment for petitioner by *Fountain, Judge,* entered at the 17 April 1978 Civil Ses-

sion of Superior Court, DARE County. This case was docketed and argued as No. 98 at the Fall Term 1979.

Petitioner Coastal Ready-Mix Concrete Company, Incorporated (Ready-Mix) holds an option to purchase approximately 2.97 acres of land located within the boundaries of the town of Nags Head. The land is in the middle of a parcel personally owned by officers of the Ready-Mix Corporation and is within Nags Head Zoning District C-2. Parties have stipulated that petitioner can bring this action.

Land zoned C-2 in Nags Head is available for general commercial development. This use does not include development of moderately heavy industry such as concrete plants; however, the town Zoning Ordinance (the Ordinance) expressly makes such development a conditional use within the C-2 district provided developers meet certain delineated criteria. Conditional use permits are granted upon application and approval of the Board of Commissioners of the Town of Nags Head (the Commissioners).

Believing it could meet conditional use criteria, Ready-Mix applied to respondents Commissioners for a conditional use permit to allow it to build a concrete plant on the land in question. The application was properly referred to the Nags Head Planning Board which investigated and recommended to the Commissioners that the application be granted, pending certain agreed-upon modifications to Ready-Mix's plan.

After a public hearing at which Ready-Mix was permitted to present evidence and cross-examine witnesses, the Commissioners denied the application, citing, *inter alia*, as findings of fact supporting its denial:

4. The site cannot be properly screened from adjoining property as apparently intended with the requirement of Section 10.04 C(4)(d), and the mere erection of screening devices from the majority of activity of Nags Head on a level plain does not constitute the intent of the ordinance requiring screening.

5. The activity, as proposed, does not, in fact, comply with Section 7.07 of the Zoning Ordinance in height in that the so-called bins are structures and not appurtenances. . . .

7. The site falls under the requirements of the Subdivision Ordinance and as presented does not follow the provisions of the Subdivision Ordinance requiring public access.

Ready-Mix petitioned for writ of certiorari to the Superior Court of Dare County seeking judicial review of the decision of the Commissioners. Judge Fountain allowed certiorari and, after a hearing, entered judgment reversing the denial and ordering the Commissioners to issue the permit.

The Commissioners appealed to the Court of Appeals. That court reviewed some of the facts in the record and concluded that Judge Fountain's judgment was "clearly proper and fully supported by competent evidence that petitioner had met all the requirements of the zoning ordinances of respondents." 41 N.C. App. at 462, 255 S.E. 2d at 249. The Court of Appeals also said that petitioner Ready-Mix had produced evidence that all the requirements of the zoning ordinance for a conditional use permit had been complied with and that there was no evidence to the contrary. So saying, it affirmed reversal of the Commissioners' decision.

We allowed discretionary review 24 August 1979.

Further pertinent facts will be noted within the body of this opinion.

*Gerald F. White, White, Hall, Mullen, Brumsey & Small, for the petitioner appellees Coastal Ready-Mix Concrete Co., Inc.*

*Thomas N. Barefoot and Thomas L. White, Jr., Kellogg, White & Evans, for respondent appellants Board of Commissioners of the Town of Nags Head.*

CARLTON, Justice.

The issue before us is whether the superior court properly reversed the Town of Nags Head Board of Commissioners' (Commissioners') denial of petitioner's application for a conditional use permit. Determination of the issue involves the continuing attempt to establish a proper balance between limiting arbitrary exercise of local zoning power while maintaining flexible local authority to control growth and development. We think in this case the denial of the conditional use permit by the Commis-

sioners was based on sound discretion involving no mistaken application of law. We therefore reverse the Court of Appeals which affirmed the superior court.

## I.

Authority for a municipality to grant conditional use permits is posited in G.S. 160A-381 which provides in pertinent part

the board of adjustment or the city council may issue special use permits or conditional use permits in (1) the classes of cases or situations [set forth in the zoning ordinance] and in accordance with the principles, conditions, safeguards and procedures specified therein and (2) may impose reasonable and appropriate conditions and safeguards upon these permits. (Numbered parentheses added.)

As the statute implies, the terms "special use" and "conditional use" are used interchangeably, *see,* Brough, Flexibility without Arbitrariness in the Zoning System: Observations on North Carolina Special Exception and Zoning Amendment Cases, 53 N.C.L. Rev. 925 (1975), and a conditional use or a special use permit "is one issued for a use which the ordinance expressly permits in a designated zone upon proof that certain facts and conditions detailed in the ordinance exist." *Humble Oil & Refining Company v. Board of Aldermen,* 284 N.C. 458, 467, 202 S.E. 2d 129, 135 (1974); *In re Application of Ellis,* 277 N.C. 419, 178 S.E. 2d 77 (1970).

Judicial review of town decisions to grant or deny conditional use permits is provided for in G.S. 160A-388(e) which states, *inter alia,* "Every decision of the board shall be subject to review by the superior court by proceedings in the nature of certiorari."

The scope of this judicial review is currently ambiguous. Under prior law, this Court in *Jarrell v. Board of Adjustment,* 258 N.C. 476, 480, 128 S.E. 2d 879, 883 (1963), stated that review of a special use permit decision was adequate only if the scope of such review was equal to that posited by former G.S. 143-306, the predecessor statute to the current North Carolina Administrative Procedures Act. *Humble Oil & Refining, supra,* built upon this statement and held that the "general administrative agencies review statutes" then in force were applicable to municipal deci-

sions about special or conditional use permits. 284 N.C. at 470, 202 S.E. 2d at 137.

[1] The current "general administrative agencies review statutes," however, are expressly *not* applicable to the decisions of town boards. The North Carolina Administrative Procedure Act provides judicial review only for *agency* decisions, G.S. 150A-50, from which the decisions of local municipalities are expressly exempt, G.S. 150A-2(1). Technically, then, the decision of the Nags Head Commissioners or any town board is exempted from the scope of review currently posited by the North Carolina Administrative Procedure Act. (APA).[1]

Despite this, we cannot believe that our legislature intended that persons subject to zoning decisions of a town board would be denied judicial review of the standard and scope we have come to expect under the North Carolina APA. Such a position would ignore a very long tradition in this State of significant judicial review of town zoning ordinances, *see, e.g., Lee v. Board of Adjustment,* 226 N.C. 107, 37 S.E. 2d 128, 168 A.L.R. 1 (1946); *In re Pine Hill Cemeteries, Incorporated,* 219 N.C. 735, 15 S.E. 2d 1 (1941), and would contravene the sound logic of *Jarrell, supra,* and *Humble Oil & Refining, supra.*

---

1. This scope of review provides:

§ 150A-51. Scope of review; power of court in disposing of case.— The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the agency findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedure; or

(4) Affected by other error of law; or

(5) Unsupported by substantial evidence admissible under G.S. 150A-29(a) or G.S. 150A-30 in view of the entire record as submitted; or

(6) Arbitrary and capricious.

If the court reverses or modifies the decision of the agency, the judge shall set out in writing, which writing shall become a part of the record, the reasons for such reversal or modifications. (1973, c. 1331, s. 1.)

Thus, while the specific review provision of the North Carolina APA is not directly applicable, the principles that provision embodies are highly pertinent. Indeed, even *Humble Oil & Refining, supra*, the case which extended the then effective administrative review statutes to municipal zoning decisions, did so not by express reference to statutory provisions but by derivation of certain general principles of judicial review.

In *Humble Oil & Refining*, the Chapel Hill Board of Aldermen had denied petitioner Humble's request for a conditional use permit to build a gas station. The Board had based its denial on unsworn opinion evidence elicited at a public hearing. In remanding the permit decision to the Board of Aldermen for a hearing *de novo*, this Court outlined the two-step decision-making process the town had to follow in granting or denying an application for a special use permit:

> (1) When an applicant has produced competent, material, and substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires for the issuance of a special use permit, *prima facie* he is entitled to it. (2) A denial of the permit should be based upon findings contra which are supported by competent, material, and substantial evidence appearing in the record.

*Humble Oil & Refining, supra* at 468, 202 S.E. 2d at 136, citing *Jackson v. Board of Adjustment*, 275 N.C. 155, 166 S.E. 2d 78 (1969); *Utilities Commission v. Tank Line*, 259 N.C. 363, 130 S.E. 2d 663 (1963).

Simply following the two-step process is not enough, however. The *Humble* Court went on to delineate a host of procedural safeguards town boards must provide when denying or granting special zoning requests. Emphasizing the quasi-judicial function of a board of aldermen when it hears evidence to determine the existence of facts and conditions upon which the ordinance expressly authorizes it to issue a conditional use permit, this Court stated the well-established rule that findings of fact and decisions based on those facts are final, subject to the right of the courts to review the record for errors in law and to give relief against orders which are oppressive or abusive of authority. *Humble Oil & Refining, supra* at 469, 202 S.E. 2d at 136-37; *Lee v. Board of Adjustment, supra; In re Pine Hill Cemeteries, supra.*

The Court in *Humble* further stated that a municipal board sitting in a quasi-judicial fashion must insure that an applicant is afforded a right to cross-examine witnesses, is given a right to present evidence, is provided a right to inspect documentary evidence presented against him and is afforded all the procedural steps set out in the pertinent ordinance or statute. Any decision of the town board has to be based on competent, material, and substantial evidence that is introduced at a public hearing.

[2] Extrapolating from these guidelines, it is clear that the task of a court reviewing a decision on an application for a conditional use permit made by a town board sitting as a quasi-judicial body includes:

(1) Reviewing the record for errors in law,

(2) Insuring that procedures specified by law in both statute and ordinance are followed,

(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

(4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

(5) Insuring that decisions are not arbitrary and capricious.

From the foregoing, it is apparent that both the Court of Appeals and the superior court erred in failing to apply appropriate judicial review standards. The Court of Appeals' mere conclusion that Judge Fountain's order was proper because it was supported by competent evidence is clearly erroneous. In reviewing the sufficiency and competency of the evidence at the appellate level, the question is not whether the evidence before the superior court supported that court's order but whether the evidence before the town board was supportive of its action. In proceedings of this nature, the superior court is not the trier of fact. Such is the function of the town board. *Humble Oil & Refining, supra; Lee v. Board of Adjustment, supra; In re Pine Hill Cemeteries, supra.* The trial court, reviewing the decision of a town board on a conditional use permit application, sits in the posture of an appellate court. The trial court does not review the

sufficiency of evidence presented to it but reviews that evidence presented to the town board.

Moreover, the Court of Appeals' decision represents an incomplete view of a reviewing court's role in a case of this nature. Both the superior court and the appellate courts are bound by *all* the standards of review noted above. Reviewing the sufficiency of the evidence is only one of those standards, and the Court of Appeals erred in limiting its review to this single factor. It failed to recognize the error of law committed by the trial court when Judge Fountain determined that the denial of the conditional use permit by the town board was "not based on findings *contra* which are supported by competent, material and substantial evidence appearing in the record."

With the foregoing in mind, and applying all the applicable standards of review, we turn to the contentions of the parties in this appeal.

## II.

Petitioner Ready-Mix contends that it has produced competent, material and substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires and so is *prima facie* entitled to a conditional use permit under the holding in *Humble Oil & Refining, supra.* Respondents Commissioners argue otherwise, contending that the petitioner failed in two substantial respects to show its plan met the criteria for conditional use in zone C-2:

(1) Ready-Mix's proposed concrete plant violated the height requirements of Section 7.07 of the Nags Head Zoning Ordinance (Ordinance), and

(2) Ready-Mix failed to provide public access to the proposed plant in violation of the town Subdivision Ordinance and the general lot access requirement of Section 3.08 of the Ordinance.

The Commissioners also contend that they have further produced material and substantial evidence that Ready-Mix cannot possibly meet the "spirit and intent" of the screening requirements of Section 7.06(C)(4)(d) of the Ordinance because of the unique topological features of the proposed site.

## III.

[3] As one of the reasons for denying the permit, the Commissioners found that a proposed concrete mixing bin on the site violated the height requirements of the Ordinance. The Court of Appeals did not specifically address the issue of the bin's alleged height violation, relying instead on a general statement that Ready-Mix had produced material and substantial evidence of compliance with conditional use permit requirements. With this holding we cannot agree.

Section 4.02 of the Nags Head Zoning Ordinance defines a conditional use as "a use that would not be appropriate generally or without restriction throughout a particular Zoning District but which, if controlled as to number, area, location or relation to the neighborhood, would preserve the intent of this ordinance to promote the public health, safety, morals and general welfare."

Section 7.06(C)(4) designates ready mix concrete plants a conditional use within Zoning District C-2. However, Section 7.06(D) of the Ordinance further specifies, "All permitted and conditional uses within the C-2 District, unless otherwise specified, shall comply with the dimensional requirements . . . in Section 7.07."

Section 7.07 indicates that the absolute height limit on structures in the C-2 District is 35 feet.

Testimony at public hearing indicated that Ready-Mix's plans include the presence of a concrete mixing bin. This is apparently a structure anchored to the ground with four pillars. Concrete, sand and gravel are deposited in its top by a conveyor belt and, once within the bin, are mechanically mixed and released through a gate to a truck waiting between the pillars below.

There is competent, material and substantial evidence in the record that the bin in question will be higher than 35 feet. Indeed, both sides admit that the bin will be somewhere between 45 and 50 feet high, clearly in violation of the height requirement.

Ready-Mix argues before this Court, however, that the planned bin falls under an exception to the height requirement which is found in Section 3.11 of the Ordinance. That Section, entitled "*Structures* Excluded from Height Limitations" (emphasis added), provides:

> The height limits of these regulations shall not apply to a
> church spire, belfry, cupola or dome or ornamental tower not
> intended for human occupancy, monument, water tower,
> observation tower, transmission tower, chimney, smoke
> stack, *conveyor*, flag pole, radio or television tower, mast or
> aerial, parapet wall not extended more than four feet above
> the roof line of the building and *necessary mechanical ap-*
> *purtenances*. (Emphasis added.)

Ready-Mix asserts that the proposed 45-foot-high concrete
mixing bin is not a structure *per se*, but is rather a "necessary
mechanical appurtenance" to the conveyor belt and so is express-
ly exempt from Ordinance height requirements.

In reviewing the conditional use permit application, the Com-
missioners concluded that the bin was a structure in and of itself
and thus was not exempt from height limitations. The question on
review, therefore, is not, as the superior court held, merely
whether the Commissioners' decision was based on competent,
material and substantial evidence but whether the Commissioners
made an error of law when they interpreted the exemption sec-
tion of their own Ordinance.

While Section 4.02 of the Ordinance defines a structure as
"[a]nything constructed or erected, the use of which requires loca-
tion on the ground, or attachment to something having location on
the ground," the Ordinance does not define a mechanical ap-
purtenance. In determining what the town meant when it ex-
cepted "mechanical appurtenances" to certain structures from
height limitations, we must bear in mind that, in general,
municipal ordinances are to be construed according to the same
rules as statutes enacted by the legislature. *George v. Town of
Edenton*, 294 N.C. 679, 242 S.E. 2d 877 (1978). The basic rule is to
ascertain and effectuate the intent of the legislative body, *George
v. Town of Edenton, supra; Cogdell v. Taylor*, 264 N.C. 424, 142
S.E. 2d 36 (1965); *Bryan v. Wilson*, 259 N.C. 107, 130 S.E. 2d 68
(1963); 56 Am. Jur. 2d Municipal Corporations § 398 (1971). The
best indicia of that intent are the language of the statute or or-
dinance, the spirit of the act and what the act seeks to ac-
complish. *Stevenson v. City of Durham*, 281 N.C. 300, 188 S.E. 2d
281 (1972) and cases cited therein.

Taking these indicia one by one, the *language* chosen here clearly contemplates that an appurtenance is something adjunct or secondary *and* necessary to the function of the primary thing. Indeed, appellate courts of this State have several times so construed the term. In *Rickman Manufacturing Company v. Gable*, 246 N.C. 1, 97 S.E. 2d 672 (1957), this Court defined appurtenance as "(1) 'a thing which belongs to another thing as principal, and which passes as incident to the principal thing.' (2) It must have such relation to the principal thing as to be capable of use in connection therewith." *Id.* at 15, 97 S.E. 2d at 682 quoting 4 C.J. 1467, *Foil v. Drainage Commissioners*, 192 N.C. 652, 135 S.E. 781 (1926). *See also Humphreys v. McKissock*, 140 U.S. 304, 313-14, 11 S.Ct. 779, 781, 35 L.Ed. 473, 476 (1891). In *Rickman, supra*, the dispute was whether a heating system in the basement of a building was an appurtenance to the lease of the second and third floors. The Court concluded that the heating system was an appurtenance because it was physically secondary and adjunct *and* was necessary to the use and enjoyment of the lease.

In *Blackwelder v. Holyoke Mutual Fire Insurance Company*, 10 N.C. App. 576, 180 S.E. 2d 37, 43 A.L.R. 3d 1354 (1971), the Court of Appeals defined an appurtenant private structure as (1) an incident of a main insured building (2) necessarily connected with its use and enjoyment. That court concluded that a shed some 400 foot distance from a residence was an appurtenant structure to the dwelling because the shed could be used for storage by the occupants of the main dwelling.

In property law, an easement appurtenant is incident to and exists only in connection with a dominant estate owned by the same person, *Shingleton v. State*, 260 N.C. 451, 133 S.E. 2d 183 (1963), pertains to the enjoyment of the dominant estate, *Shingleton, supra*, and is incapable of existence separate and apart from the land to which it is annexed. *Yount v. Lowe*, 288 N.C. 90, 215 S.E. 2d 563 (1975).

The distillation of these judicial pronouncements is that an appurtenance, as used in the Nags Head Ordinance, is something (1) physically secondary to a primary part which (2) serves a useful or necessary function in connection with the primary part.

Such a definition is in keeping with the *spirit* of the Ordinance. Reading the pertinent Section, Section 3.11, we see that

Concrete Co. v. Board of Commissioners

it expressly exempts several structures which would nearly always have some secondary and necessary mechanical device attached. For example, a transmission tower might have a microwave disc attached and a church spire or belfry might have some mechanism to electronically ring bells attached.

Indeed, all of the exempted structures themselves are adjunct and, in most cases, appended to heavier but lower buildings. Moreover, the phrase "and necessary mechanical appurtenances" immediately follows the exemption of parapet walls not extended more than four feet above the roof line of buildings. A persuasive argument could be made that the reference to necessary mechanical appurtenances is limited to equipment placed on top of buildings which would cause the total height of the structure to exceed 35 feet, such as air conditioning or heating equipment, and not to the other exempted items. We also note that the height limitation of 35 feet applies to *all* buildings in town, regardless of the zoning district.[2]

Such limitations point clearly to a *goal* of the Ordinance to promote planned and orderly growth in a fragile coastal area exposed to strong climatic conditions. We therefore believe the sort of "mechanical appurtenance" contemplated by the Ordinance as necessary to the operation of a conveyor and thus exempt from height limitations is a mechanical device relatively small and necessarily adjunct to the conveyor itself, such as a secondary motor attached to the top of the belt. The 45-foot-tall bin is thus clearly not a "necessary mechanical appurtenance" to the conveyor as contemplated by the makers of the Ordinance. The purpose of a conveyor is to transport material from one place to another. The storage bin is independent of the conveyor in its function of storing and mixing concrete materials. It serves no purpose in the transporting function of the conveyor. The large,

2. The only exception to the 35-foot limitation is District CR, the Commercial Residential District allowing motel and hotel development, where Section 7.04(D) of the Ordinance requires two feet of setback for every one foot of structure over 35 feet. We can only conclude the town realized the value of hotels and motels to its tourist economy but was concerned about the stability of tall structures in strong sea winds. The additional setback requirement is an attempt to make certain that any damage from the toppling of a hotel will be confined to the lot the hotel will be located upon. There is nothing in this exception to the 35-foot limit on buildings which contravenes the spirit and goal of preserving delicate coastal land from excessive building and development.

self-supported bin, some 45 to 50 feet in height, is an independent structure with a function separate and apart from the conveyor. It is clearly not physically secondary to the conveyor.

Moreover, while our reasoning is in response to assertions of counsel it is not at all certain that the phrase in question, "necessary mechanical appurtenances," is limited to mechanical devices appurtenant to the listed "structures." Our review indicates that Section 3.11 lists "structures" usually considered themselves to be appurtenant to other main structures. For example, a TV tower is an appurtenance to a TV station. Thus the phrase "and necessary mechanical appurtenances" could very well have been written to include a catch-all category for other appurtenances similar to those specifically listed in Section 3.11. Under this view we would not even reach the issue whether the bin is appurtenant to the conveyor. The question would be whether the bin was an appurtenance to the concrete plant. Even under this interpretation, however, we do not think the bin would be exempted from height requirements. Surely the town board would not expressly exempt the conveyor and then fail to exclude the much heavier and larger bin. The clear inference is that the Commissioners did not intend to exempt a bin that exceeded 35 feet. Again, this construction is in keeping with the goal of protecting delicate outer bank acreage.

Ready-Mix argues, however, that if we find the bin not to be an appurtenance, then the Ordinance will be rendered illogical. Ready-Mix contends that it is impossible to build a ready mix concrete plant that would ever conform to the 35-foot height limitation so that it would be impossible to ever get a conditional use permit even though concrete plants are an express conditional use. This argument is suspect on two grounds. First, whether a bin could be constructed which is less than 35 feet tall is a question of fact about which little exists in the record beyond counsel for Ready-Mix's argument to the Commissioners. Second, Ready-Mix can apply for a variance from the height requirement if it feels the height requirement unjustly applies to it.

We therefore hold that the Commissioners' conclusion the bin was not excepted from height requirements was a correct one based on a proper interpretation of the applicable section of the Ordinance. In light of this holding, it is unnecessary to reach ap-

pellants' remaining two contentions. The Commissioners' denial of the conditional use permit is supported by the height violation of the bin.

Accordingly, the decisions of the Court of Appeals and the superior court are reversed. This case is remanded to the Court of Appeals which shall remand to the Superior Court, Dare County, with directions to that court to affirm the Commissioners' denial of the conditional use permit.

Reversed and remanded.