HARRY BRUMMER v. BOARD OF ADJUSTMENT OF THE CITY OF ASHEVILLE

No. 8528SC1250

(Filed 3 June 1986)

**Municipal Corporations § 30.6— interpretation of variance—impropriety**

> An order by respondent board interpreting its earlier grant of a variance was unsupported by the evidence where the evidence tended to show that respondent had no intention at all concerning the mark from which elevation of petitioner's house was to be measured but instead left that and other details affecting the variance for petitioner and opposing neighboring property owners to agree on, and the evidence also showed that the agreement made by petitioner and opposing property owners was ambiguous.

APPEAL by respondent Board of Adjustment from *Snepp, Judge.* Order entered 16 July 1985 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 14 March 1986.

On 24 September 1984 the Board of Adjustment of the City of Asheville, under its zoning ordinance, granted petitioner a variance which reduced the setback requirement for his residential lot from 35 to 20 feet. Petitioner soon obtained a building per-

mit and began constructing a house, the entire front of which was closer to the street than 35 feet. Since the lot was steeply sloped moving the whole structure closer to the road also moved it uphill and increased its elevation, which displeased some neighboring property owners. At their request, on 19 November 1984 the city zoning and planning office, maintaining that the variance applied to only a portion of the house, asked the Board to interpret its grant. The Board determined that the staff's understanding of the variance was correct and that petitioner was in violation, but allowed him to apply for a retroactive variance of 15 feet applicable to the entire structure. This variance was granted by the Board on 26 November 1984, subject to petitioner complying with an agreement made with adjacent property owners pertaining thereto. The agreement, drafted by petitioner's attorney and the attorneys for the opposing property owners and incorporated into the variance, contained the following provision, among others:

> (1) . . . The height of the building is to be 114' [elevation] plus 3'6" said 3'6" consists of an 8" thick concrete wall surrounding the roof, and 6" metal railing, making a total height of 117'6". [elevation] The top of the roof will be level with no elevator shaft extending above roof line. The previous plan was to have a total height of 123'6". [No protrusion extending above 6" metal railing. Bench elevation as shown on exhibit "A" attached hereto certified by Frank McGahren 11/21/84. Drawing No. D-8283-T-1 Rev. 2].

(The bracketed portions were written in and initialed by the agreeing parties.) Exhibit "A," a topographical survey print, shows the elevation of various parts of the lot and the location of the house, the superstructure of which was already in place. The print indicates that the surveyor used as a bench mark of 100 feet a sewer lid in the street at the northeast corner of petitioner's lot. The agreement also required petitioner to provide the Board with a complete set of plans for the house by 7 December 1984, and plans that showed the ceiling height, dimensions and layout of each floor of the house were duly delivered.

Some weeks later the neighboring property owners complained to the planning and zoning staff that the construction was in violation of the agreement and the variance. After a new survey based on the sewer lid shown on Exhibit "A" indicated that the structure exceeded the allowed elevation by approxi-

Brummer v. Bd. of Adjustment

mately two and a half feet, the Board was asked to interpret the 26 November 1984 variance. Though the purpose of the hearing in April, 1985 was to determine the location of the bench elevation referred to in the agreement no new evidence was received and petitioner, who was ill, was not there. Some Board members and the attorney for the adjoining property owners argued that the mark was the aforesaid sewer lid; petitioner's counsel argued that since the house was in place it was the center of the property line at the base of the house. The Director of Planning and Zoning advised the Board, as one of its findings of fact stated, that he was unable to determine what mark should be used in measuring for the maximum height of the structure. After the arguments were over the Board found that "the bench mark identified on Exhibit A as 'B.M.EL. 100.00 SEWER LID' was intended by this Board on November 26, 1984, as the reference point for the measuring of the elevation restriction contained in the Agreement incorporated in said variance," and directed the Building Inspector to enforce the zoning ordinance accordingly. Upon review pursuant to a writ of certiorari, the Superior Court found that the Board's finding and conclusion as to the meaning of its variance was not supported by evidence and vacated the order of enforcement.

*Reynolds & Stewart, by G. Crawford Rippy, III, for petitioner appellee.*

*Roberts, Cogburn, McClure & Williams, by Max O. Cogburn, Isaac N. Northup, Jr. and Glenn S. Gentry, for respondent appellant.*

PHILLIPS, Judge.

Respondent Board first contends that the Superior Court had no jurisdiction to consider petitioner's challenge to the 15 April 1985 order because it was a collateral attack upon the 26 November 1984 order which allowed the variance and was not appealed. This contention has no merit. The validity of the 26 November 1984 order is not, and has not been, challenged by petitioner, who had no occasion to appeal from it since it granted him the variance that he requested. What petitioner's appeal challenged was the validity of the respondent Board's 15 April 1985 interpretation of the 26 November 1984 variance. Since petitioner was aggrieved by the latter order the Superior Court clearly had

jurisdiction under G.S. 160A-388(e) to review the matter under its writ of certiorari and we thus have jurisdiction to review the court's decision. In doing so we will follow the principles stated in G.S. 150A-51. *Coastal Ready-Mix Concrete Co. v. Board of Commissioners of the Town of Nags Head*, 299 N.C. 620, 265 S.E. 2d 379, *rehearing denied*, 300 N.C. 562, 270 S.E. 2d 106 (1980).

The authority of the Board to grant a variance with conditions, clearly established by our law, *Lee v. Board of Adjustment of Rocky Mount*, 226 N.C. 107, 37 S.E. 2d 128, 168 A.L.R. 1 (1946), is not at issue. The only real issue raised by the respondent's appeal is whether the record as a whole shows that the Board's interpretative order is supported by competent, material and substantial evidence. *Thompson v. Wake County Board of Education*, 292 N.C. 406, 233 S.E. 2d 538 (1977).

The Superior Court found that the order is not so supported and we agree. The record plainly shows, as the Superior Court found, that the Board had no intention at all concerning the mark from which the elevation of the structure was to be measured, but left that and other details affecting the variance for the petitioner and the opposing property owners to agree on; and it also shows that the agreement made by the petitioner and opposing property owners was ambiguous. While the agreement can be construed as providing for the height of the structure to be computed from the aforesaid sewer lid, since the existence of the house with its superstructure in place and the plans showing the height of each room were facts upon which the agreement was based, it can also be construed as requiring the measurement to be made from the base of the house. In all events, the enforcement order cannot stand, since the finding of fact upon which it rests has no evidentiary support.

Affirmed.

Judges BECTON and COZORT concur.