ROBERT WARD AND WIFE, BETTY MOTICKA, JAMES R. McCULLOUGH AND
WIFE, LAURA J. McCULLOUGH, RALPH E. OUTCALT, AND DAVID KEITH
JOHNSON, PETITIONERS v. MIKE C. INSCOE, C. RUXTON BOBBITT, JR., JERRY
PARRISH, DAVE STALLINGS, DAVID E. MEEKINS, BAILEY ALSTON, ARLINE
RICHARDSON, JOSEPH BROWN, RICHARD I. VAUGHAN, JR., WILLIAM F.
TAYLOR, FRANK M. HESTER, JR., GENE C. AYSCUE, RUSTY RENSHAW, AND
GARRY DAEKE IN THEIR OFFICIAL CAPACITY AS THE HENDERSON ZONING BOARD
OF ADJUSTMENT, W. BROWNELL WRIGHT, ZONING ADMINISTRATOR OF THE CITY OF
HENDERSON, BRANCH BANKING & TRUST COMPANY, RESPONDENTS

No. COA03-1649

(Filed 19 October 2004)

## 1. Zoning— conduct of hearing—notice

The Henderson Zoning Board of Adjustment did not violate
petitioners' due process rights in its issuance of a special use per-
mit allowing a bank to build drive-through lanes. The Board pro-
vided petitioners with notice of the initial public hearings, at
which all parties availed themselves of the right to present their
case. Although petitioners were not given specific notice of two
hearings after an appeal and remand, those hearings involved
only more specific findings on the evidence previously presented,
and petitioners had general notice in that the hearings were held
at the regularly scheduled and advertised meetings.

## 2. Zoning— special use permit—sufficiency of evidence— issuance not arbitrary

The trial court did not abuse its discretion in applying the
whole record test to a decision by the Henderson Zoning Board of
Adjustment to grant a special use permit for the construction of
drive-through lanes at a bank. The Board conducted a careful and
thorough investigation and the evidence supported issuance of
the permit under the standards set out in the ordinance.

Appeal by petitioners from order entered 16 September 2003 by
Judge Robert H. Hobgood in Vance County Superior Court. Heard in
the Court of Appeals 15 September 2004.

WARD v. INSCOE

[166 N.C. App. 586 (2004)]

*Browne, Flebotte, Wilson & Horn, P.L.L.C., by Daniel R. Flebotte, for petitioners-appellants.*

*No brief filed for respondents-appellees Mike C. Inscoe, C. Ruxton Bobbitt, Jr., Jerry Parrish, Dave Stallings, David E. Meekins, Bailey Alston, Arline Richardson, Joseph Brown, Richard I. Vaughan, Jr., William F. Taylor, Frank M. Hester, Jr., Gene C. Ayscue, Rusty Renshaw, and Garry Daeke in Their Official Capacity as the Henderson Zoning Board of Adjustment, W. Brownell Wright, Zoning Administrator of the City of Henderson.*

*Royster, Cross & Currin, LLP, by Dale W. Hensley, for respondent-appellee Branch Banking & Trust Company.*

TYSON, Judge.

Robert Ward, Betty Moticka, James R. McCullough, Laura J. McCullough, Ralph E. Outcalt, and David Keith Johnson ("petitioners") appeal the trial court's order, which affirmed the Henderson Zoning Board of Adjustment's ("Board") issuance of a Special Use Permit to respondent Branch Banking and Trust Company ("BB&T"). We affirm.

## I. Background

BB&T applied to construct a bank building in a mixed use neighborhood that is zoned for office-institutional use under the City of Henderson Zoning Ordinance ("Ordinance"). The plans included four drive-thru lanes. Section 300B of the Ordinance allows drive-thru lanes with issuance of a special use permit by the Board. BB&T petitioned both the Board and the North Carolina Department of Transportation ("DOT") for approval of access permits and to construct the building with the drive-thru lanes.

On 3 October 2000, the Board, including members Mike C. Inscoe, C. Ruxton Bobbitt, Jr., Dave Stallings, David E. Meekins, Bailey Alston, Arline Richardson, Richard I. Vaughan, Jr., William F. Taylor, Gene C. Ayscue, and Rusty Renshaw conducted a public hearing and heard from BB&T's representatives supporting the application and from petitioners and other neighborhood residents opposing the construction. BB&T offered its plans for development. Petitioners and other opponents expressed concerns over the project's impact and raised safety, traffic, aesthetic, and economic issues. The Board continued the hearing for thirty days to await DOT's decision.

WARD v. INSCOE

[166 N.C. App. 586 (2004)]

The Board reconvened on 7 November 2000 and additional evidence was heard and received from both sides. BB&T's representatives and a city engineer offered design plans showing the building and surrounding land use. Discussion addressed the possibility of widening the surrounding streets to accommodate increased traffic flow and access, ingress, egress to and from the new bank.

Petitioners testified concerning the project's potential impacts and effects on nearby residents. Their first concerns included increased traffic flows and the resulting safety issues for pedestrians and neighborhood children, the likelihood of property values being adversely affected, increased difficulty of residential parking, and that widening the street would require removal of many large, old shade trees. Other opponents voiced similar concerns.

After hearing from all those present at the meeting who wished to speak or present evidence, the Board voted four-to-one to approve the issuance of the special use permit. Several conditions were placed on the issuance, including: (1) not removing more trees than necessary, (2) planting buffer hedges between the site and neighboring homes, and (3) involving neighborhood residents in decisions concerning permanent sidewalks and steps.

Petitioners filed a Complaint and Petition for Writ of *Certiorari* on 1 December 2000 in the Vance County Superior Court, seeking review of the Board's decision. Petitioners alleged the Board failed to comply with procedures set forth in Sections 803 and 804 of the Ordinance and asserted the Board failed to make inquiries on the impact of the development on the neighborhood and to make factual findings. Board members Mike C. Inscoe, C. Ruxton Bobbitt, Jr., Jerry Parrish, Dave Stallings, David E. Meekins, Bailey Alston, Arline Richardson, Joseph Brown, Richard I. Vaughan, Jr., William F. Taylor, Frank M. Hester, Jr., Gene C. Ayscue, Rusty Renshaw, Garry Daeke, and W. Brownell Wright, Zoning Administrator of the City of Henderson, (collectively, "City Defendants") answered on 28 December 2000. BB&T answered on 6 March 2001.

The matter was heard on 5 July 2001 before Judge Hobgood. The trial court originally found:

(1) The decision rendered by the Board of Adjustment on November 7, 2000 was deficient in that the required findings of fact by the Board of Adjustment were merely a recitation of the standards imposed upon the Board of Adjustment for the

**WARD v. INSCOE**

[166 N.C. App. 586 (2004)]

issuance of a special use permit by the General Statutes of North Carolina and the City of Henderson Zoning Ordinances, rather than providing a detailed listing of the facts which the Board found from the preponderance of the evidence presented at the public hearing and which facts caused the Board of Adjustment to issue the special use permit to the Bank.

The trial court conducted a whole record review and found the Board considered all the evidence presented at the public hearing. The trial court ruled that substantial, competent, and material evidence supported the issuance of the special use permit and affirmed the Board's decision. Petitioners filed a timely notice of appeal to this Court on 31 January 2002.

In an unpublished opinion filed 5 May 2003, this Court vacated the trial court's decision. The case was remanded to the trial court to enter an order directing the Board to make factual findings sufficiently specific to facilitate judicial review of the Board's decision. *Ward v. Inscoe*, 157 N.C. App. 366, 578 S.E.2d 710 (2003) (unpublished).

The trial court issued an order on 3 June 2003. Later that day, the Board found facts supporting issuance of the special use permit. The Board did not receive or hear additional evidence. The permit was signed on 1 July 2003.

On 1 August 2003, petitioners filed a Petition for Writ of *Certiorari* and for Judicial Review alleging: (1) the Board's permit lacked evidence to support its findings of fact and conclusions of law; (2) the Board violated procedural requirements and committed errors of law; and (3) the Board violated the petitioners' due process rights. Petitioners based their last claim on failure to receive personal or general notice of or an opportunity to present evidence at the 3 June 2003 hearing. Both City Defendants and BB&T answered the petition.

The trial court entered a Stipulation and Consent Order on 2 September 2003 signed by all parties agreeing to treat petitioners' request and answers of the City Defendants and BB&T as motions for review of the Board's findings of fact. The trial court conducted a whole record review and affirmed the Board's decision on 16 September 2003. It found the Board's order contained sufficient factual findings for review and the existence of substantial, competent, and material evidence to support issuance of the special use permit. Petitioners appeal.

WARD v. INSCOE

[166 N.C. App. 586 (2004)]

## II. Issues

The issues on appeal are whether: (1) petitioners' due process rights were violated by not receiving personal notice of or an opportunity to be heard at the 3 June and 1 July 2003 meetings; and (2) the trial court abused its discretion by finding that substantial, competent, and material evidence supported the Board's issuance of the special use permit.

## III. Petitioners' Due Process Concerns

[1] Petitioners contend the Board, sitting as a quasi-judicial body, failed to provide them with the "essential elements" of a fair trial. The Board met on 3 June 2003 and 1 July 2003 to find facts as directed by the trial court's order and did not provide personal notice to petitioners. Petitioners argue this failure to personally notify them of the hearings violated their due process rights under the Ordinance, North Carolina General Statutes, and North Carolina case law. We disagree.

Section 804 of the Ordinance states the Board is a quasi-judicial body. In *Refining Co. v. Board of Aldermen*, our Supreme Court set out the following requirements for a quasi-judicial proceeding:

(1) follow the procedures specified in the ordinance; (2) conduct its hearings in accordance with fair-trial standards; (3) base its findings of fact only upon competent, material, and substantial evidence; and (4) in allowing or denying the application, . . . state the basic facts on which it relied with sufficient specificity to inform the parties, as well as the court, what induced its decision.

284 N.C. 458, 471, 202 S.E.2d 129, 138 (1974). Section 804.6 of the Ordinance requires the Board to allow all parties the right to present their case, call witnesses, offer exhibits, and cross-examine. There is no dispute that all parties availed themselves with each of these rights at the two public hearings.

This Court addressed a similar issue in *In re Application of Raynor*, 94 N.C. App. 173, 379 S.E.2d 884, *appeal dismissed and disc. rev. denied*, 325 N.C. 546, 385 S.E.2d 495 (1989). The landowner applied to a town board for a conditional use permit to allow construction of a mobile home park on his property. *Raynor*, 94 N.C. App. at 174, 379 S.E.2d at 885. The neighbors petitioned the board to re-zone his property for only single family residences. *Id.* at 174, 379 S.E.2d at 885. Public hearings were held to receive evidence supporting and opposing the application and petition. *Id.* Following intro-

duction of the evidence, discussions continued during several regularly scheduled town meetings over the course of a few months. *Id.* During one of the meetings, the landowner offered to place conditions on his application to address opponents' concerns. *Id.* The neighbors did not receive personal notice of or attend the meeting. *Id.* The landowner's application was then approved. *Id.* The neighbors argued they were "entitled to a fair opportunity to be heard in quasi-judicial proceedings," and that right was denied by lack of notice. *Id.* at 175, 379 S.E.2d at 885.

This Court found no error. *Id.* at 178, 379 S.E.2d at 887. We based our decision on several factors similar to those here. The landowner did not offer additional evidence in the neighbors absence. *Id.* The meetings were held during regularly scheduled meeting times announced to the general public. *Id.* at 174, 379 S.E.2d at 885. The neighbors received opportunities to cross-examine adverse witnesses and to offer evidence in support of their position and in rebuttal of their opponents' contentions. *Id.* at 177, 379 S.E.2d at 886.

In the prior appeal of this case, we held that the trial court applied an improper review of the Board's decision. *Ward,* 157 N.C. App. at 366, 578 S.E.2d at 710. The Order issuing the special use permit contained testimony, discussed the standards for issuance, and imposed conditions on the permit. It did not include findings upon which the Board made its decision. The trial court determined "the [Board] *must have* considered the evidence" in issuing the permit despite the lack of findings, and affirmed the decision. *Id.* This Court remanded "this matter to the [trial] court for an order directing the [Board] to make factual findings that are sufficiently specific to enable review of the [Board's] decision." This Court noted that "extensive evidence" was presented to the Board in support of and in opposition to the issuance of the permit. *Id.*

Both parties acknowledge that no new evidence was considered by the Board during the subsequent meetings in June and July of 2003. The Order indicates the Board members who heard the evidence and arguments at the 3 October 2000 and 7 November 2000 hearings made the factual findings and cited directly from the transcripts of those public hearings. Public hearings ended on 7 November 2000. Any further meetings were intended solely to make findings of fact on the evidence previously presented by all parties. Petitioners received notice of and attended the public hearings and utilized multiple opportunities to be heard and present evidence.

The record also indicates the Board held its meetings on the first Tuesday of every month, a fact advertised by the Board and acknowledged by petitioners in their brief. Each hearing and meeting before the Board fell on the first Tuesday of the month. These regularly scheduled advertised meetings provided petitioners with general notice. As no further evidence was heard in June and July of 2003 and general notice existed, petitioners' due process rights were not violated.

The record and transcripts show petitioners, other neighborhood residents, and BB&T received notice and ample opportunity to be heard by and present evidence to the Board concerning the issuance of the special use permit at the public hearings. All parties presented evidence in support of or in opposition to the application. The public hearing extended over two months to await DOT's ruling on the access permits, which provided all parties additional time to gather and present evidence. The Board originally followed the guidelines of Sections 803 and 804, save 804.7, which we previously held required more specific findings of fact. Here, the Board's Order corrects that omission. This assignment of error is overruled.

IV. Standard of Review

[2] Petitioners assert the trial court abused its discretion in applying a whole record review to find that substantial, competent, and material evidence supports the issuance of a special use permit. We disagree.

Our Supreme Court outlined the appropriate standard of review of a decision by a quasi-judicial body in *Concrete Co. v. Board of Comm'rs*, 299 N.C. 620, 265 S.E.2d 379, *reh'g denied*, 300 N.C. 562, 270 S.E.2d 106 (1980). A reviewing court is to:

(1) Review the record for errors in law;

(2) Insure that procedures specified by law in both statute and ordinance are followed;

(3) Insure that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents;

(4) Insure that decisions of town boards are supported by competent, material and substantial evidence in the whole record; and

(5) Insure that decisions are not arbitrary and capricious.

*Id.* at 626, 265 S.E.2d at 383. Both the trial court and this Court are bound by these standards of review. *Id.* at 627, 265 S.E.2d at 383.

### V. Substantial, Competent, and Material Evidence

We consider whether the evidence before the Board, not the trial court, supported the issuance of the special use permit. *In re Application of Goforth Properties*, 76 N.C. App. 231, 233, 332 S.E.2d 503, 504, *disc. rev. denied*, 315 N.C. 183, 337 S.E.2d 857 (1985). In determining the sufficiency of the evidence, we apply the whole record test to review testimony and exhibits in support of and in opposition to the issuance of the permit. *Thompson v. Board of Education*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977). In the prior appeal, this Court addressed guideline two and found the Board met procedures mandated by statute and the Ordinance. We have already held petitioners' due process rights were protected, which satisfies guideline three. We now review guidelines one, four, and five.

Guideline one requires a review of the trial court's decision for errors in law. This Court previously remanded this case to remedy an improper application of whole record review. Upon remand, that error in law was corrected by inclusion of factual findings within the Board's Order to enable appellate review. Our review of the trial court's 16 September 2003 order reveals a proper whole record review by the trial court, and that the Board's decision is based on substantial evidence that supports its findings of fact, which in turn support its conclusions of law.

We address guidelines four and five by reviewing evidence before the Board. Section 803 of the Ordinance provides,

The [Board] shall hear and decide any application for a special use permit, and *shall* issue said permit where the applicant has demonstrated by the preponderance of the evidence that the standards of this Ordinance, including the following shall be met:

(a) That the use will comply with the requirements of Article 600A and 600B of this Ordinance;

(b) That the use will not materially and adversely affect the public health, safety, or welfare;

(c) That the use will not substantially injure the value of adjoining or abutting properties;

(d) That the use will be in harmony with the area in which it is located; or be a matter of public need;

(e) That the use will not substantially contribute to an overburdening of municipal services;

(f) That the use will be in conformity with the Henderson Land Use Plan and other duly adopted plans and policies of the City.

The Board's Order specifically recited evidence presented at the public hearings, and addressed each element in its findings of fact.

The Board found under Sections A and B that the proposed use will comply with design standards of Article 600A and *"will not materially and adversely affect the public health, safety or welfare"* of the neighborhood. BB&T hired a landscape architect to ensure conformity with the Ordinance's design requirements. The Board determined that evidence presented at the hearings showing that expansion and modification of surrounding streets, improvements to storm drains, relocation of a fire hydrant, removal of undergrowth, and installation of a new traffic light, would help, not hinder public safety. The Board also found the increase in traffic counts estimated by DOT would not significantly impact public safety. Substantial evidence in the record supports this finding.

The Board addressed Sections C and D by noting the area is zoned office—institutional, "which is a transitional zone from residential to commercial uses." It recognized the area is "becoming substantially commercial," shown by recent construction of a drug store on the same block and few surrounding residences. The Board found that the addition of a bank would not upset the balance between the mixed use properties or substantially injure real estate values. To limit any impact on adjoining properties, the Board imposed conditions on the permit's issuance. These requirements addressed street parking, lighting, tree removal, buffers between the bank and adjoining property, and required BB&T to repair any damage caused by construction. Substantial evidence in the record supports this finding.

The Board found under Section E that the expansion and modification of the surrounding streets, sidewalks, storm drains, and fire hydrants "[would] *not substantially contribute to an overburdening of municipal services.*" BB&T's representatives acknowledged financial responsibility for all improvements. In addition, DOT determined the increase in traffic would not cause "significant overburdening of

the neighborhood streets." Substantial evidence in the record supports this finding.

The Board further found under Section F "the proposed use will be *in substantial conformity with the City of Henderson's Land Use Plan and other duly adopted plans and policies of the City.*" The Board also found the construction of a bank on the property was "permitted as a matter of right in the [office—institutional] zoning district" under the Ordinance. Only the addition of drive-thru lanes triggered the Ordinance requiring BB&T to apply for a special use permit. The Board found the bank, expansion and modifications to surrounding streets, the conditions placed on the permit, and any increase in traffic conformed with both the City of Henderson's Traffic Improvement and Capital Improvement plans. Substantial evidence in the record supports this finding.

In consideration of petitioners' and other opponents' concerns and the interests of the City, the Board included conditions in the Permit. Section 803.1 of the Ordinance allows the Board to place reasonable conditions on the issuance of the special use permit. Here, the Board imposed several requirements to address concerns expressed by petitioners and other neighborhood residents. In addition to full compliance with both the plans accepted by the Board and the Ordinance, the Order required BB&T to: (1) limit the removal of trees to areas necessary for ingress/egress; (2) replace sidewalks and steps damaged by construction; (3) design its lighting plan to avoid lights shining into adjoining homes; and (4) limit customer street side parking reserved for residents. The Board reserved the power to revoke the permit if BB&T does not conform to the conditions.

## VI. Arbitrary and Capricious

Guideline five requires the Board's decision not to be arbitrary and capricious. An administrative ruling is deemed arbitrary and capricious when it is "whimsical," "willful[,] and [an] unreasonable action without consideration or in disregard of facts or law or without determining principle." *Lenoir Mem. Hosp. v. N.C. Dep't of Human Resources,* 98 N.C. App. 178, 181, 309 S.E.2d 448, 450 (quoting *Board of Education [of Blount County] v. Phillips,* 264 Ala. 603, 89 So.2d 96 (1956)), *disc. rev. denied,* 327 N.C. 430, 395 S.E.2d 682 (1990); *see also Tate Terrace Realty Investors v. Currituck County,* 127 N.C. App. 212, 222-23, 488 S.E.2d 845, 851 (quoting Black's Law Dictionary 105 (6th ed. 1990)), *disc. rev. denied,* 347 N.C. 409, 496 S.E.2d 394, *appeal dismissed,* 347 N.C. 409, 496 S.E.2d 386 (1997).

The Board conducted a careful and thorough investigation of the evidence supporting and opposing the special use permit. Petitioners failed to show and the record does not indicate that the Board acted unfairly or arbitrarily. The Board's decision was not arbitrary and capricious and was based on substantial, competent, and material evidence in the record. This assignment of error is overruled.

## VII.  Conclusion

Petitioners were provided with notice of the two public hearings, where they attended and opposed the application through testimony, exhibits, and cross-examination. The petitioners received general notice of the later meetings, which were held solely to remedy the lack of factual findings and to sign the Board's Order. No further public hearings were held and no new evidence was received or entertained. Petitioners' due process rights were protected during the hearings in October and November of 2000 and during the meetings in June and July of 2003.

The record and transcripts show BB&T presented substantial, competent, and material evidence in support of its application for a special use permit. The order of the trial court is affirmed.

Affirmed.

Judges HUDSON and BRYANT concur.