C. DWIGHT HOWARD v. CITY OF KINSTON

No. COA00-1397

(Filed 2 January 2002)

**1. Zoning— conditional use permit—judicial review**

    The decision of a city council issuing or denying a conditional use permit is subject to review by the superior court, which sits as an appellate rather than a trial court. The Court of Appeals

must determine whether the trial court exercised the proper scope of review and correctly applied the scope of review.

## 2. Appeal and Error— record—video only—disfavored

The submission of videotapes of trial proceedings in lieu of written transcripts is disfavored; however, in the absence of a rule from the Supreme Court requiring a written transcript and in the interests of judicial economy, the Court of Appeals proceeded with a zoning case submitted with a videotape of the city council meeting rather than a written transcript.

## 3. Zoning— conditional use permit—rights of petitioner

A petitioner seeking a conditional use permit was not denied any of the rights afforded during a quasi-judicial proceeding where the city limited the number of witnesses, relied on unsworn testimony, and allowed the submission of letters after the hearing. Having heard testimony from both sides of the issue, the city was not obligated to allow every person to testify; petitioner waived the right to have witnesses sworn, to cross-examine witnesses, and to present rebuttal evidence by not being sworn himself and by not requesting these rights, and there was no evidence that the city actually considered the additional letters.

## 4. Zoning— conditional use permit—sufficiency of evidence

Competent, material, and substantial evidence in the record supported a city's denial of a conditional use permit for multi-family units where the city relied upon testimony about traffic from a member of the city's planning department and from a resident's personal knowledge and observation of the public health and safety. While the denial of a conditional use permit may not be based on conclusions which are speculative, sentimental, personal, vague, or merely an excuse to prohibit the requested use, the testimony here constitutes competent, material, and substantial evidence supporting the denial of the permit.

Appeal by petitioner from order entered 20 July 2000 by Judge Jerry Braswell in Lenoir County Superior Court. Heard in the Court of Appeals 11 October 2001.

*Dal F. Wooten for the petitioner-appellant.*

*Vernon H. Rochelle for the respondent-appellee.*

EAGLES, Chief Judge.

C. Dwight Howard ("petitioner") appeals from the trial court's order denying his petition for a writ of certiorari requesting review of the Kinston City Council's ("the City") denial of his application for a conditional use permit. On appeal, petitioner asserts that the trial court erred in denying the petition because (1) the City denied him the procedural guarantees required in a quasi-judicial hearing and (2) the City's decision was not supported by competent evidence in the record. After careful review, we affirm the trial court.

The evidence tended to show that petitioner and his wife owned a thirty-seven acre tract of land located in Kinston, North Carolina. Approximately thirty years before the commencement of this action, the City zoned petitioner's land RA-6, which allows for the construction of multi-family dwellings on the land. Petitioner's land adjoins a subdivision known as Westwood (comprised of Westwood I and Westwood II), which the City zoned RA-8 and limited to single family dwellings approximately twenty-five years ago. In 2000, petitioner filed an application with the City for a conditional use permit requesting approval of construction of a major subdivision on his land. In his application, petitioner sought to subdivide his thirty-seven acre tract of land into thirty-three separate lots on which to construct multi-family units.

On 20 March 2000, a public hearing on petitioner's application was held before a joint session of the Kinston Planning Board ("Planning Board") and the City Council. At this hearing, the City limited both sides' number of witnesses and the amount of time each witness could speak. Initially, Ed Lynch of the City's Planning Department testified that the number of vehicular trips in the area would increase if petitioner's proposal was approved.

Next, petitioner provided the City with unsworn statements in support of his application. The City then allowed eight of the approximately thirty residents of Westwood in attendance to provide unsworn testimony in opposition to petitioner's application. The witnesses's testimony was of the general nature that the potential subdivision would reduce property values, increase traffic, and endanger the public health and safety.

Following the hearing, on 27 March 2000, the Planning Board met and recommended that the City deny petitioner's application.

Thereafter, on 3 April 2000, the City issued an order denying the application because it determined that the proposal would endanger the public health and safety. On 17 April 2000, the City vacated its 3 April 2000 order and entered a second order denying petitioner's application. In the 17 April 2000 order, the City concluded that the proposed subdivision would materially endanger the public health and safety, would affect existing property values, and would not be in harmony with existing development and uses in the area.

Petitioner filed a petition for a writ of certiorari requesting review of the denial of his application in Lenoir County Superior Court. On 5 June 2000, petitioner's case came on for hearing before the Honorable Jerry Braswell. After the hearing, the trial court entered an order denying the petition. In its order, the trial court ruled that the City's decision "in denying Petitioner's request for a Conditional Use Permit was not arbitrary and capricious and was supported by competent evidence." Petitioner appeals.

[1] Every decision of a city council issuing or denying a conditional use permit "shall be subject to review by the superior court by proceedings in the nature of certiorari." G.S. § 160A-381(c). During review pursuant to writ of certiorari under G.S. § 160A-381(c), "the superior court judge [sits] as an appellate court, not a trial court." *Batch v. Town of Chapel Hill*, 326 N.C. 1, 11, 387 S.E.2d 655, 662 (1990). Review is based solely upon the record as certified, and "[t]he test is whether the findings of fact are supported by competent evidence in the record; if so, they are conclusive upon review." *Id.*

"Our task, in reviewing a superior court order entered after a review of a board decision is two-fold: (1) to determine whether the trial court exercised the proper scope of review, and (2) to review whether the trial court correctly applied this scope of review." *Whiteco Outdoor Adver. v. Johnston County Bd. of Adjust.*, 132 N.C. App. 465, 468, 513 S.E.2d 70, 73 (1999). Here, the trial court made its determination "based upon the record evidence." Accordingly, we conclude that the trial court exercised the proper scope of review. Next, we must review whether the trial court exercised that scope of review correctly.

Zoning decisions regarding conditional use permits are quasi-judicial in nature. *See Concrete Co. v. Board of Commissioners*, 299 N.C. 620, 626, 265 S.E.2d 379, 383 (1980). Generally,

the task of a court reviewing a decision on an application for a conditional use permit made by a town board sitting as a quasi-judicial body includes:

(1) Reviewing the record for errors in law,

(2) Insuring that procedures specified by law in both statute and ordinance are followed,

(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

(4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and

(5) Insuring that decisions are not arbitrary and capricious.

*Id.*

When, as here, "it is alleged that the action of a quasi-judicial body was not supported by substantial evidence or was arbitrary and capricious, the reviewing court must apply the 'whole record' test.' " *Tate Terrace Realty Investors, Inc. v. Currituck County*, 127 N.C. App. 212, 218, 488 S.E.2d 845, 849 (1997). " 'The "whole record" test requires the reviewing court to examine all the competent evidence . . . which comprise[s] the "whole record" to determine if there is substantial evidence in the record to support the [quasi-judicial body's] findings and conclusions.' " *Sun Suites Holdings, LLC v. Board of Aldermen of Town of Garner*, 139 N.C. App. 269, 273, 533 S.E.2d 525, 528, *writ of supersedeas and disc. review denied*, 353 N.C. 280, 546 S.E.2d 397 (2000) (quoting *Ellis v. N.C. Crime Victims Compensation Comm.*, 111 N.C. App. 157, 162, 432 S.E.2d 160, 164 (1993)). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Tate Terrace*, 127 N.C. App. at 218, 488 S.E.2d at 849. "In reviewing the sufficiency and competency of the evidence at the appellate level, the question is not whether the evidence before the superior court supported that court's order but whether the evidence before the town board was supportive of its action." *Concrete Co.*, 299 N.C. at 626, 265 S.E.2d at 383.

[2] At the outset, we note that as part of the record on appeal the parties submitted a videotape of the City's 20 March 2000 public hearing. "The parties stipulated that the video tape filed with the Clerk of

the Court of Appeals is an exact copy of the tape viewed, heard, and considered by Judge Braswell at the hearing of this cause on June 5, 2000." No written transcripts accompanied the record or briefs.

In *Shillington v. K-Mart Corp.*, 102 N.C. App. 187, 190, 402 S.E.2d 155, 157 (1991), this Court expressed the view that the submission of videotapes of trial proceedings, in lieu of written transcripts, is disfavored. We opined that "the use of videotapes in this Court for appellate review greatly frustrates effective review of the trial proceedings . . . ." *Id.* Nevertheless, "in the interests of judicial economy and a timely resolution of th[is] appeal[] and in the absence of a rule from the Supreme Court requiring a written transcript in cases that are appealed to this Court," we choose to proceed with a resolution of this case. *Id.*

**[3]** Petitioner contends that the trial court erred in denying his petition for certiorari because the City denied him the procedural guarantees required in a quasi-judicial hearing. We disagree.

Procedurally, a city council

conducting a quasi-judicial hearing, can dispense with no essential element of a fair trial:

(1) The party whose rights are being determined must be given the opportunity to offer evidence, cross-examine adverse witnesses, inspect documents, and offer evidence in explanation and rebuttal;

(2) absent stipulations or waiver such a board may not base findings as to the existence or nonexistence of crucial facts upon unsworn statements; and

(3) crucial findings of fact which are "unsupported by competent, material and substantial evidence in view of the entire record as submitted" cannot stand.

*Refining Co. v. Board of Aldermen*, 284 N.C. 458, 470, 202 S.E.2d 129, 137 (1974) (citation omitted). Here, petitioner contends that the City dispensed with the procedural guarantees required in a quasi-judicial hearing by (1) limiting the number of witnesses and the amount of time each witness could speak, (2) relying on the unsworn testimony of witnesses in opposition to his application, and (3) allowing the submission of letters in opposition to his application after the hearing.

As to the City's limiting testimony of witnesses,

> [t]he contention that the [City was] required to hear all persons in attendance without limitation as to number and time is untenable . . . . [The law does] not contemplate that all persons entertaining the same views [should] have an unqualified right to iterate and reiterate these views in endless repetition.

*Freeland v. Orange County*, 273 N.C. 452, 457, 160 S.E.2d 282, 286 (1968). Here, the record reflects that approximately thirty residents of Westwood were in attendance and ready to testify in opposition to petitioner's application at the hearing. The City limited the discussion by individuals to three minutes each, groups to five minutes each, and each side to a total of five witnesses (the City actually heard from eight residents in opposition). "Having heard testimony from both sides of the issue, the [City] was not obligated to allow every person to testify." *Richardson v. Union County Bd. of Adjust.*, 136 N.C. App. 134, 140, 523 S.E.2d 432, 437 (1999). Accordingly, we conclude that the City did not abuse its discretion in limiting testimony.

Next, as to the City's reliance on the unsworn testimony of witnesses, a city may not base critical findings of fact on unsworn statements absent stipulations or waiver. *See Jarrell v. Board of Adjustment*, 258 N.C. 476, 481, 128 S.E.2d 879, 883 (1963). "However, by voluntary participation in a hearing, a [petitioner providing unsworn testimony] may waive the right to insist that the witnesses should be under oath." *Craver v. Board of Adjustment*, 267 N.C. 40, 42, 147 S.E.2d 599, 601 (1966); *see also Burton v. Zoning Board of Adjustment*, 49 N.C. App. 439, 442, 271 S.E.2d 550, 552 (1980). Here, petitioner was not sworn as a witness. Moreover, petitioner was accompanied by counsel to the hearing. Neither petitioner nor counsel made a request that those in opposition to the application be sworn, that petitioner have the right to cross-examine the witnesses, or that he have the right to present evidence in rebuttal. Thus, we conclude that petitioner waived these rights.

Lastly, the City allowed the "submission of letters after the public hearing," which petitioner claims "denied [him] his right to cross examine . . . ." In its 17 April 2000 order, the City stated that its decision was based upon "all of the evidence and arguments presented at the public hearing, . . . the reports from the City Planning Staff and . . . the recommendation of the City Planning Board concerning the application . . . ." While the City admitted in its order that it "receiv[ed] additional objections and petitions from property own-

**HOWARD v. CITY OF KINSTON**

[148 N.C. App. 238 (2002)]

ers in the affected subdivision[]," the record does not reflect that the City actually considered these letters in rendering its decision. In the absence of evidence that the City considered these letters, petitioner's argument as to his being denied the right to cross-examine is moot.

In sum, we conclude that the public hearing before the City was not procedurally flawed. Accordingly, petitioner was not denied any of the rights afforded a party during a quasi-judicial proceeding.

[4] Next, petitioner contends that the trial court erred in denying his petition for writ of certiorari because the City's decision was not supported by competent evidence in the record. After careful examination of the record, we disagree.

The Kinston Unified Development Ordinance ("UDO") provides that

[e]ven if the permit-issuing board finds that the application complies with all other provisions of this chapter, it may still deny the permit if it concludes, based upon the information submitted at the hearing, that if completed as proposed, the development:

(1) Will materially endanger the public health or safety; *or*

(2) Will substantially injure the value of adjoining or abutting property; *or*

(3) Will not be in harmony with existing development and uses within the area in which it is to be located; *or*

(4) Will not be in general conformity with the land use plan, thoroughfare plan, or other plan officially adopted by the council.

Kinston UDO § 54(d) (emphasis added). In denying petitioner's application for a conditional use permit, the City concluded that the proposal would "materially endanger the public health or safety of the residents, including children, in the adjacent subdivision[]," would "affect existing property values," and would "not be in harmony with existing development and uses in the area in which it is to be located." The enumerated bases for denying a permit are listed in the ordinance in the disjunctive and any one will suffice. "If even one of the reasons articulated by the [City] for denial of the subdivision permit is supported by valid enabling legislation and competent evidence

on the record, the [City's] decision must be affirmed." *Batch*, 326 N.C. 1, 12, 387 S.E.2d 655, 662.

When an applicant for a conditional use permit "produces competent, material, and substantial evidence of compliance with all ordinance requirements, the applicant has made a *prima facie* showing of entitlement to a permit." *SBA, Inc. v. City of Asheville City Council*, 141 N.C. App. 19, 27, 539 S.E.2d 18, 22 (2000). Once an applicant makes this showing, the burden of establishing that the approval of a conditional use permit would endanger the public health, safety, and welfare falls upon those who oppose the issuance of the permit. *See Woodhouse v. Board of Commissioners*, 299 N.C. 211, 219, 261 S.E.2d 882, 888 (1980). Denial of a conditional use permit must be based upon findings which are supported by competent, material, and substantial evidence appearing in the record. *See SBA*, 141 N.C. App. at 27, 539 S.E.2d at 22.

A city council may not deny a conditional use permit in their unguided discretion or because, in their view, it would adversely affect the public interest. *See In re Application of Ellis*, 277 N.C. 419, 425, 178 S.E.2d 77, 81 (1970). Moreover, a city council's denial of a conditional use permit based solely upon the generalized objections and concerns of neighboring community members is impermissible. *See Gregory v. County of Harnett*, 128 N.C. App. 161, 165, 493 S.E.2d 786, 789 (1997). Speculative assertions, mere expression of opinion, and generalized fears "about the possible effects of granting a permit are insufficient to support the findings of a quasi-judicial body." *Sun Suites*, 139 N.C. App. at 276, 533 S.E.2d at 530. In other words, the denial of a conditional use permit may not be based on conclusions which are speculative, sentimental, personal, vague, or merely an excuse to prohibit the requested use. See *Woodhouse*, 299 N.C. at 220, 261 S.E.2d at 888.

Here, the City concluded that "[t]he proposed subdivision will create from [300] to [800] additional daily trips on existing streets which will materially endanger the public health or safety of the residents, including children, in the adjacent subdivision[]." In reaching this conclusion, the City relied on the testimony of Ed Lynch, a member of the City's Planning Department, and Phyllis Gay, a Westwood resident testifying in opposition to petitioner's application.

At the public hearing, Mr. Lynch provided a presentation on the impact of petitioner's proposal on existing traffic in the area. In sum, Mr. Lynch concluded that the proposed subdivision would signifi-

cantly increase vehicular activity in the area by approximately 300 to 800 trips a day. Ms. Gay also testified during the public hearing. During her testimony, Ms. Gay testified that approximately 100 children lived in Westwood, that existing traffic has caused near accidents involving children while they were walking and riding their bicycles, and increased traffic would endanger the health and safety of the children.

We note that Ms. Gay based her testimony about the adverse effects of the proposed subdivision on traffic congestion and safety upon her personal knowledge and observations. Thus, unlike *Gregory*, *Sun Suites*, and *Woodhouse*, cited above, we conclude that Ms. Gay's concerns were valid and not the result of speculative assertions, mere expression of opinion, or her generalized fears.

"An increase in traffic does not necessarily mean an intensification of traffic congestion or a traffic hazard." *Refining Co.*, 284 N.C. 458, 469, 202 S.E.2d 129, 136. Nevertheless, Mr. Lynch's testimony regarding an increase in traffic, in conjunction with Ms. Gay's testimony regarding danger to the public health and safety does constitute competent, material, and substantial evidence. *See In re Application of Goforth Properties*, 76 N.C. App. 231, 332 S.E.2d 503 (1985) (holding that testimony regarding increased traffic, as well as witness testimony expressing concern for the safety of children walking and riding bicycles, constituted competent, material, and substantial evidence supporting a town's denial of a special use permit). Accordingly, we conclude that competent, material, and substantial evidence in the record supports the City's denial of petitioner's conditional use permit, and we affirm the trial court.

Having concluded that there is competent evidence to support the Council's denial of the conditional use permit, we need not consider whether all of the City's other findings were supported by competent evidence. The trial court's order denying petitioner's petition for writ of certiorari is

Affirmed.

Judges HUDSON and CAMPBELL concur.