Heafner v. City of Gastonia, 2006 NCBC 17

| | |
|---|---|
| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION |
| GASTON COUNTY | 06 CVS 788 |

RONALD M. HEAFNER, TAMMY G. HEAFNER, DANNY L. DAMERON, WILLIE B. DAMERON, ROY L. STOWE, BARRY W. STOWE, JR., STEPHANIE P. STOWE, BARRY W. STOWE, SR.,

CORDELIA M. STOWE, WILLIAM C.

STOWE, DWAIN HINKLE, HARVEY L. BEATY, PATSY S. BEATY, GEORGE NEAL BEATY, ANTHONY ALDRIDGE SCRUGGS, KATHY HARBIN SCRUGGS, REBECCA R. DAMERON, CALVIN OWENBY, SANDRA OWENBY, FAY W. TUCKER, JEFFREY W. STOWE,

LEANNE B. STOWE, HAROLD R.

STOWE, JR., KATHY L. STOWE,

JOSEPH H. HENKEL, JR., LAURA S.

HENKEL, WILLIAM NEELY CRAIG,

WILMA RATCHFORD CRAIG, DAVID MICHAEL KISER, RONALD J.

RUMFELT, PATRICIA C. RUMFELT,

ANGELA TROUTMAN GRIFFIN,

BOBBY LEE GRIFFIN, DONNA JO

GRIFFIN, EDWARD KEITH HARBIN,

and NITA P. HARBIN,

    Plaintiffs,

  v.

CITY OF GASTONIA,

    Defendant,

  v.

**ORDER**

SITE CONTROL DEVELOPMENT
SERVICES, INC.,

                    Intervenor-Defendant.

---

The Court heard this matter on August 7, 2006 during a special session of Superior Court in Mecklenburg County on the Defendants' Motion for Summary Judgment as to the Plaintiffs' declaratory judgment action. The Court also considered the merits of an appeal by the Plaintiffs of a zoning decision made by the City of Gastonia, acting through its City Council. By consent of all parties of record, memorialized in an Order entered on July 17, 2006, the Court considered these matters out of session, out of term, and out of County.

After considering the Court file, the certified record of the zoning hearings conducted on November 15, 2005 and January 17, 2006, the video recording of those proceedings, and the briefs and arguments of the parties, the Court **GRANTS** Defendants' Motion for Summary Judgment as to the Plaintiffs' declaratory judgment action and **AFFIRMS** the Gastonia City Council's zoning decision. Accordingly, the Court **DISMISSES** the Amended Complaint and Petition for Writ of Certiorari **with prejudice**.

## I.

## FACTUAL BACKGROUND

### A.

### PROCEDURAL POSTURE

The Plaintiffs are all citizens and residents of Gaston County, North Carolina. On February 16, 2006, Plaintiffs filed a Complaint and Petition for Writ of Certiorari challenging decisions made by the Defendant City of Gastonia (the "City"), acting through its City Council, with respect to certain property (the "Property") that Intervenor-Defendant Site Control Development Services, Inc. ("SCDS") seeks to develop into a planned residential development. The Court subsequently allowed the Writ and ordered the City to submit the record of the relevant proceedings.

On March 15, 2006, Plaintiffs filed an Amended Complaint and Petition for Writ of Certiorari (the "Amended Complaint"). On March 29, 2006, SCDS filed its Answer. The City filed its Answer on March 30, 2006. On July 3, 2006, all Defendants moved for summary judgment as to the Amended Complaint.

### B.

**SUMMARY OF THE FACTS**

The Property consists of about 364 acres located generally south of the City, between Beaty Road and Union-New Hope Road along the Catawba Creek. Approximately 15 acres of the Property lies within the City's territorial limits, with the balance of the land situated within Gaston County. Prior to the City's zoning decision, the annexed land had been zoned "R-1" and "R-2" by Gaston County.[1] The Property is surrounded primarily by large single family homes and vacant lots.

On or about June 20, 2003 (and as subsequently modified on or about October 20, 2005), Intervenor-Defendant SCDS, acting on behalf of several landowners, filed an application (the "Application") with the City requesting that it (a) annex 349 acres of the Property (then subject to Gaston County's territorial jurisdiction zoning authority); (b) zone the entire 364 acre tract to an R-3/PRD[2] conditional use district;[3] and (c) issue SCDS a conditional use permit authorizing the proposed development.

SCDC's planned residential development includes a maximum of 891 single-family units, consisting of 693 single-family homes and 198 townhomes, with lot sizes ranging from 50 to 70 feet in width. The development also sets aside 71.2 acres for common open space, including an amenity area, walking trails, and sidewalks along internal streets, and 87.7 acres along the Catawba Creek for a conservation easement, trails, and other recreational amenities.

The City set the Application on for hearing before its planning commission on October 13, 2005 and before its City Council (the "Council") on November 15, 2005. As required by Gastonia, N.C., Code §§ 17-263, 17-295, the City gave notice of the hearings (indicating that it would be considering the establishment of "R-3/PRD" zoning for newly annexed territory) in the local paper on October 2, 2005, and again on October 9, 2005. On November 3, 2005, the City's planning commission voted 5-3 to deny the Application.[4] Pursuant to Gastonia, N.C., Code §§ 17-264, 17-295, the Application was then set for further hearing during the November 15, 2005 regularly scheduled Council meeting.

At the November 15 hearing, SCDS requested a continuance to consider revisions to the Application in light of concerns raised by citizens (including several of the Plaintiffs) during the planning commission hearing. SCDS also wished to consider an analysis being prepared by the City's staff with respect to the increased costs of providing basic municipal services to the development. While a number of citizens voiced their concerns regarding the Application (ranging from the negative environmental impacts to the lack of infrastructure to support the increased growth), none objected to SCDS's request for

a continuance. Accordingly, Council continued its consideration of the Application until January 17, 2006.

During the two-month interval, SCDS convened several neighborhood meetings to consider the concerns of those opposed to the Application. As a result, the Application was modified in certain particulars, including a reduction in the number of homes, an increase in the size of the individual lots, a change to the size and type of trees to be planted on the lots and on the public streets, a requirement that the community swimming pool be at least junior Olympic size, a continuing commitment by SCDS to absorb the costs of any expenses incurred by the City for right of way acquisitions related to the development, and a future commitment by SCDS to offer adjoining property for sale to the County at cost for expanded school construction if the developers were able to purchase the property.

On January 11, 2006, Plaintiffs filed a protest petition with the Gastonia City Clerk regarding the pending Application. Pursuant to N.C.G.S. § 160A-385(a)(1), a valid protest petition would have required that the Application be approved by three-fourths of the council members.

At the January 17, 2006 hearing, Council first considered and approved a number of proposed amendments to the Code of Ordinances of the City of Gastonia (the "Code") that had been passed on by the City's planning commission. As pertains to the matters before me, Council amended Gastonia, N.C., Code § 17-350 (dealing with protest petitions) by substituting the word "territorial" for the word "extraterritorial" in that section. At the hearing, the City Attorney advised Council that the amendment was necessary to cure an inconsistency between the Code and the language of N.C.G.S. § 160A-385(a)(3).

Before considering the merits of the Application, Council determined (based on the advice of the City Attorney) that the protest petition was invalid as a matter of law. After an extended hearing during which Council considered evidence and statements of parties both for and against the proposed development (and, in particular, the concerns voiced by the Plaintiffs as to the high density of the development and related environmental issues, the alleged inability of the existing infrastructure to meet the increased demand for utilities, roads, water, schools, and related amenities, as well as the developer's proposals for addressing these concerns through a clustered, low-impact development model, substantial capital investments, and a phased development of the project), Council requested additional modifications to the Application. SCDS approved the modifications, and Council then voted 5-2 in favor of the Application, thereby (a) adopting an ordinance annexing the Property into the Gastonia City limits effective May 15, 2006; (b) initially zoning the Property "R-3/PRD" effective May 15, 2006; and (c) granting SCDS a conditional use permit for the proposed planned residential development.

Based on the information contained in the Application, and the testimony and other evidence

presented at the hearing, Council, with respect to the conditional use permit, specifically found that: (a) the proposed use would not materially endanger the public health or safety if located where proposed and developed according to the plan; (b) the proposed use met all required conditions and specifications, including those specifically set out in the Code for planned residential developments; (c) the proposed use would not substantially injure the value of the adjoining or abutting property; and (d) the location and character of the proposed use, if developed according to the plan as submitted and approved, would be in harmony with the area where it would be located and in general conformity with the adopted Gastonia Land Use Plan and other plans for physical development of the City.[5] Pursuant to Gastonia, N.C., Code §§ 17-296, 17-347, Council also found that the proposed use was consistent with its long-range development plan, otherwise reasonable, and in the public interest.

## II.

## STANDARD OF REVIEW

As an initial matter, I have some substantial doubt as to whether Plaintiffs are authorized to join a petition for writ of certiorari and a declaratory judgment action in one pleading. *See Batch v. Town of Chapel Hill,* 326 N.C. 1, 387 S.E.2d 655 (1990). Nevertheless, just as the North Carolina Supreme Court opted to do in *Batch,* I will not dismiss the case, rather I will apply the relevant standard of review when considering the separate claims.

### A.

### DECLARATORY JUDGMENT ACTION

With respect to the Plaintiffs' claims for declaratory judgment, summary judgment under N. C. R. Civ. P. 56 is appropriate when there is no issue as to any material fact and one of the parties is entitled to judgment as a matter of law. *N.C. Ass'n of ABC Bds. v. Hunt*, 76 N.C. App. 290, 292, 332 S.E.2d 693, 694 (1985). Summary judgment is appropriate in a declaratory judgment action contesting the validity of a zoning ordinance where the facts are not in dispute and the only issue for a court is the legal significance of those facts. *Blades v. City of Raleigh,* 280 N.C. 531, 545, 187 S.E.2d 35, 43 (1972). In this case, I conclude that there are no disputed issues of material fact and that this is a proper case for summary judgment.

### B.

### WRIT OF CERTIORARI

With respect to Plaintiffs' petition for a writ of certiorari, a zoning decision by a local governing body (in this case, the City's decision to zone the annexed property as "R-3/PRD") is a legislative act

governed by N.C.G.S. § 160A-381. Under this statute, the City has the authority to zone or rezone property "when reasonably necessary to do so in the interests of the public health, safety, morals or welfare." *Willis v. Union County*, 77 N.C. App. 407, 409, 335 S.E.2d 76, 77 (1985). Of critical importance here, "[a] duly adopted [zoning] ordinance is presumed to be valid and the burden is upon the plaintiff to establish its invalidity." *Nelson v. City of Burlington*, 80 N.C. App. 285, 288, 341 S.E.2d 739, 741 (1986).

To meet their burden, Plaintiffs must show that Council acted arbitrarily and capriciously in approving the Application. *Allred v. City of Raleigh*, 277 N.C. 530, 545, 178 S.E.2d 432, 440 (1971). "A decision is arbitrary and capricious if it was 'patently in bad faith', 'whimsical', or if it lacked fair and careful consideration." *Teague v. Western Carolina Univ.*, 108 N.C. App. 689, 692, 424 S.E.2d 684, 686 (1993) (citation omitted).

Council's separate decision to issue SCDS a conditional use permit authorizing the proposed development is a quasi-judicial zoning decision. *Humble Oil & Refining Co. v. Board of Aldermen*, 284 N.C. 458, 469, 202 S.E.2d 129, 136-37 (1974). In making this quasi-judicial decision, Council was required to "investigate facts, or ascertain the existence of facts, hold hearings, weigh evidence, and draw conclusions from them, as a basis for their official action, and to exercise discretion of a judicial nature." *County of Lancaster v. Mecklenburg County,* 334 N.C. 496, 507, 434 S.E.2d 604, 612 (1993) (quoting *Black's Law Dictionary* 1245 (6th ed. 1990)).

My obligation in reviewing Plaintiffs' objections to Council's decision to grant the conditional use permit is to (1) review the record for errors in law; (2) insure that procedures specified by law were followed; (3) insure that appropriate due process rights of the participants were protected, including the right to offer evidence, cross-examine witnesses, and inspect documents; (4) insure that Council's decision was supported by competent, material, and substantial evidence in the whole record; and (5) insure that Council's decision was not arbitrary and capricious. *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs*, 299 N.C. 620, 626, 265 S.E.2d 379, 383 (1980).

Where Plaintiffs allege that Council's actions were based on an error of law, my review is *de novo*. *C.C. & J. Enters., Inc. v. City of Asheville*, 132 N.C. App. 550, 552, 512 S.E.2d 766, 769 (1999). On the other hand, where the Plaintiffs allege that the decision to grant the conditional use permit was not supported by the evidence or was arbitrary and capricious, I must apply the "whole record" test. *Id.*

The "whole record test" requires a reviewing court to examine all competent evidence to determine whether the legislative body's decision is supported by "substantial evidence." *Kerik v. Davidson County*, 145 N.C. App. 222, 229, 551 S.E.2d 186, 191 (2001). Substantial evidence is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion. *Dialysis Care v. N C. Dep't of Health & Human Servs.,* 137 N.C. App. 638, 646, 529 S.E.2d 257, 261 (2000). "The 'whole record' test does not allow the reviewing court to replace the [legislative body's] judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo.*" *Thompson v. Bd. of Educ.*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977) (citation omitted).

## III.

## ANALYSIS

Plaintiffs' Amended Complaint alleges a host of procedural and substantive deficiencies in the proceedings that they believe entitle them to relief. The Court addresses each in turn:

1. **Council was not authorized to approve the annexation of the Property. (Am. Compl. ¶¶ 3, 21, 29.)**

This is an issue of law that the Court reviews *de novo.* It is unclear whether the Plaintiffs have challenged Council's decision to annex the Property. If they have, I find that Plaintiffs lack standing to challenge that decision because they do not allege that they own property in the annexed territory or that they reside in the City of Gastonia. *See* N.C.G.S. § 160A-58.2 (stating that, at an annexation hearing, a person residing in or owning property in the area proposed for annexation and any resident of the annexing city may appear and be heard on the questions of the sufficiency of the petition and the desirability of the annexation).

Similarly, to the extent Plaintiffs raise an issue regarding the effective date of the annexation, I find that N.C.G.S. § 160A-58.2 specifically authorizes delayed effective dates "within six months from the date of passage." Because Council approved the annexation on January 17, 2006, with an effective date of May 15, 2006 (to coincide with the effective date of the initial zoning of the Property), its decision falls squarely within the parameters set forth in the statute for delayed enforcement. Accordingly, Plaintiffs are not entitled to relief on this basis.

2. **SCDS failed to give timely notice of appeal of the planning commission's denial of the Application. (Am. Compl. ¶ 4.)**

This is an issue of law that the Court reviews *de novo.* Plaintiffs assert that on November 3, 2005, the City's planning commission voted against the Application submitted by SCDS and that no appeal of that decision was properly perfected to Council. As to this issue, however, Gastonia, N.C., Code § 17-264 makes clear that any decision on such an application made by a vote of less than three-fourths of the members of the planning commission present and not otherwise excluded from voting at the meeting is

automatically forwarded to Council for consideration, without the need for any party to file notice of appeal.

Because the planning commission voted 5-3 to deny the Application, SCDS was not required to give notice of appeal; instead, Council was bound by the plain language of the Code to consider the Application. Accordingly, the Application was properly before Council for decision and the Plaintiffs' claim to the contrary is without merit.

3.    **The City failed to give proper notice of the substance of the public hearing. (Am. Compl. ¶¶ 17, 23, 24.)**

This is an issue of law that the Court reviews *de novo*. Plaintiffs here assert that the City failed to give proper notice of its intention to consider the Application. I disagree.

North Carolina law requires that a notice of public hearing "fairly and sufficiently apprise those whose rights may be affected of the nature and character of the action proposed." *Sellers v. City of Asheville,* 33 N.C. App. 544, 549, 236 S.E.2d 283, 286 (1977). The various hearing notices of record apprised the public of SCDS's proposal to seek "R-3/PRD" zoning (that is zoning that would allow construction of a Planned Residential Development) in a newly annexed area, which the notices identified as the Property. I find that the notices satisfy the standard set forth in *Sellers*. I also note that Plaintiffs' have vigorously challenged the Application, so it is clear that they understood "the nature and character of the action proposed." The Court therefore rejects this claim of error.

4.    **Council failed to conduct a timely public hearing on the Application. (Am. Compl. ¶¶ 4-5.)**

This is an issue of law that the Court reviews *de novo*. Plaintiffs argue that Council failed to conduct a public hearing on the Application within 60 days of the date of any appeal, as required by Gastonia, N.C., Code § 17-265. I question whether this section of the Code applies in the context of a petition for conditional use zoning that is forwarded automatically to Council for action. Even if the provision does apply, however, Council complied with its mandate when it placed this matter on its agenda for hearing on November 15, 2005 (a mere 12 days after the planning commission issued its decision), and then, without objection of record, continued the hearing until January 17, 2006. Accordingly, Plaintiffs are not entitled to relief on this basis.

5.    **The Plaintiffs' protest petition required that Council approve any zoning action by a three-fourths' vote. (Am. Compl. ¶¶ 6-9, 13.)**

This is an issue of law that the Court reviews *de novo*. SCDS first asserts that the Plaintiffs waived this issue by failing to timely file their protest petition with the city Clerk. I disagree. The relevant

statute, N.C.G.S. § 160A-386, requires that any such petition be received by the city clerk in sufficient time to allow the City at least two normal work days (excluding weekends and holidays) before the date established for a public hearing. In this case, the hearing was initially scheduled for November 15, 2005, but then continued until January 17, 2006. The Plaintiffs then filed and served their protest petition with the city clerk on January 11, 2006, well within the two-day window set by the statute.

Although the Plaintiffs' protest petition was filed timely, the applicable law does not afford the Plaintiffs a substantive right to challenge the Application. N.C.G.S. § 160A-385(a)(3) makes clear that the Plaintiffs have no right to protest any amendment made by the City to its zoning ordinance "which initially zones property added to the territorial coverage of the ordinance as a result of annexation or otherwise." That is precisely what occurred here when Council annexed property previously within the territorial jurisdiction of Gaston County and then considered SCDS's proposal for conditional use zoning.

Plaintiffs do not explain how the Code's failed attempt to parrot the language of N.C.G.S. § 160A-385(a)(3) (by erroneously using the word "extraterritorial" instead of "territorial") creates a protest right where none otherwise exists under the statute. As the City points out, "[w]here there is a conflict between a city ordinance and the general law, the latter will prevail." *Eldredge v. Mangum,* 216 N.C. 532, 554, 5 S.E.2d 721, 722 (1939). For that reason, the Court agrees that Council's action to amend the Code to correct an obvious scrivener's error did not violate any of the Plaintiffs' rights.

Plaintiffs also allege that its protest petition is not foreclosed by N.C.G.S. § 160A-385(a)(3) because the Property had previously been zoned by Gaston County and thus the City's proposed zoning change was not an "initial zoning" for purposes of determining the Plaintiffs' protest rights. The statute, however, does not make such a distinction. Moreover, for purposes of zoning, the City and the County are separate sovereigns. Once the City annexed the Property, it was no longer subject to the County's zoning ordinance. As a result, any action by the City with respect to zoning of the newly annexed Property was an "initial zoning" by that sovereign, which the relevant statute makes clear the Plaintiffs could not challenge by way of a protest petition. Accordingly, Plaintiffs are not entitled to relief on this basis.

6. **Council had no authority to zone the Property R-3, and any attempt to permit broader uses than that otherwise allowed by the R-3 general use district was improper. (Am. Compl. ¶¶ 15-16, 23.)**

This is an issue of law that the Court reviews *de novo.* Plaintiffs allege that Council (a) improperly zoned the Property "R-3" in the face of language in the Code indicating that the more appropriate zoning classification for newly annexed territory or for any property that has not already been the subject of

substantial residential development is the more restrictive "R-1"; and (b) had no authority to modify the restrictions on development that are a part of the R-3 general use district.

Plaintiffs do not point the Court to the particular Code provision that they rely on for these arguments. Regardless, as the Defendants note, Council did not zone the Property to a general zoning district on January 17, 2006. Rather, Council zoned the Property to a conditional use district and then approved a conditional use permit for the proposed planned residential development. The procedure for taking such action is set forth expressly in the Code and is one that is authorized by North Carolina law. *See Chrismon v. Guilford County*, 322 N.C. 611, 617, 370 S.E.2d 579, 583 (1988) (approving conditional use zoning as a vehicle for providing greater zoning flexibility). Accordingly, the Court rejects this claim.

**7.     The Code does not provide for approval of an "R-3/PRD" conditional use zoning district. (Am. Compl. ¶¶ 18, 23.)**

This is an issue of law that the Court reviews *de novo*. Plaintiffs correctly note that the Code does not contain a conditional use district called "R-3/PRD". In fact, the Code does not establish any specific "conditional use districts"; rather Gastonia, N.C., Code §§ 17-74, 17-292 authorize the creation of conditional use districts based on a voluntary application by a landowner for conditional use zoning.

Gastonia, N.C., Code § 17-74 makes clear that property zoned "R-3" may be established as a conditional use district, and Gastonia, N.C., Code § 17-321 authorizes planned residential developments within an R-3 district, but only on a conditional use basis. Accordingly, I find that the relevant sections of the Code authorized Council to take the action it did on January 17, 2006, that is, approve the Application requesting zoning of the Property to an "R-3/PRD" conditional use district for construction of a planned residential development. Plaintiffs' argument to the contrary is without merit.

**8.     The procedures set forth in the Code for consideration of conditional use zoning districts are impermissibly vague. (Am. Compl. ¶¶ 19-20.)**

This is an issue of law that the Court reviews *de novo*. Plaintiffs here allege that "it is not clear from the Code whether PRD developments are permitted within R-3 districts, nor is it clear what the proper procedures for rezoning and issuing a PRD [conditional use permit] are." Gastonia, N.C., Code § 17-321, however, expressly authorizes construction of planned residential developments in an R-3 district, provided the development complies with specific requirements as to minimum gross project acreage and maximum gross density (in terms of dwelling units per acre).

The Court has reviewed the Code and concludes that it is sufficiently detailed and consistent with the requirements of North Carolina law so as to allow for the proper consideration of applications for conditional use districts. Accordingly, I decline to grant Plaintiffs relief on this ground.

9. **The City failed to comply with the procedural and substantive requirements for the issuance of a conditional use permit, and failed to make written findings of fact. (Am. Compl. ¶¶ 10-12, 22, 28, 30-33.)**

Whether Council complied with the procedural requirements for a quasi-judicial hearing is an issue that the Court reviews *de novo.* Whether Council's findings of fact are supported by the evidence of record is an issue that I review under the "whole record" test.

After reviewing the record, I find that Council afforded Plaintiffs a fair hearing, which included allowing all parties an opportunity to testify, cross-examine adverse witnesses, inspect documents, and offer evidence in explanation and rebuttal. *See generally Howard v. City of Kinston,* 148 N.C. App. 238, 243, 558 S.E.2d 221, 226 (2002).[6]

Following the evidentiary hearing, Council made the following findings of fact in support of its decision to grant the Application: (a) the proposed use would not materially endanger the public health or safety if located where proposed and developed according to the plan; (b) the proposed use met all required conditions and specifications; (c) the proposed use would not substantially injure the value of the adjoining or abutting property; and (d) the location and character of the proposed use, if developed according to the plan as submitted and approved, would be in harmony with the area where it would be located and in general conformity with the adopted Gastonia Land Use Plan and other plans for physical development of the City as adopted by Council. Council also found that the proposed development was consistent with its long-range development plans and was otherwise reasonable and in the public interest. I conclude that these findings are supported by competent, material, and substantial evidence of record.

Once SCDS met its burden of producing competent, material, and substantial evidence that its Application complied with all of the Code requirements for issuing a conditional use permit for construction of a planned residential development, the burden of establishing that approval of the permit would endanger "the health, safety, and welfare" of the community fell upon the Plaintiffs. *Howard,* 148 N.C. App. at 246, 558 S.E.2d at 227.

Plaintiffs here presented some evidence in support of their concerns that the planned residential development would increase the burden on the City's existing infrastructure, evidence the Court does not lightly discount. Council, however, considered evidence in the Application and during the hearing as to how the developer (working in conjunction with City's planning staff) intended to address those issues during the phased construction.

On appeal of a decision by a duly authorized body regarding issuance of a conditional use permit, this Court does not sit as the trier of fact. Instead, review pursuant to a writ of certiorari of an

administrative decision is based solely upon the record as certified. *See Ballenger Paving Co. v. Highway Commission*, 258 N.C. 691, 695, 129 S.E.2d 245, 248 (1963). The test is whether the findings of fact are supported by competent evidence in the record; if so, they are conclusive upon review. *Jamison v. Kyles*, 271 N.C. 722, 157 S.E.2d 550 (1967). Because Council's findings of fact are supported by competent evidence, they bind me on appeal.

My final charge is to consider whether Council's decision to grant the conditional use permit was "arbitrary and capricious." *Coastal Ready-Mix*, 299 N.C. at 626, 265 S.E.2d at 383. "A decision is arbitrary and capricious if it was 'patently in bad faith', 'whimsical', or if it lacked 'fair and careful consideration.'" *Teague*, 108 N.C. App. at 692, 424 S.E.2d at 686.

In considering this issue, I may not usurp Council's judgment as between two reasonably conflicting views, "even if [I] might have reached a different result if the matter were before [me] *de novo*." *Dialysis Care*, 137 N.C. App. at 646, 529 S.E.2d at 261. While Plaintiffs may fairly debate the wisdom of Council's decision to grant the Application, they have failed to show that the decision was "patently in bad faith", "whimsical", or that it lacked "fair and careful consideration." *Teague,* 108 N.C. App. at 692, 424 S.E.2d at 686. Accordingly, the Court is without authority to set aside Council's zoning action.

**10.    Council engaged in improper contract zoning.  (Am. Compl. ¶¶ 14, 26-27.)**

This is an issue of law that the Court reviews *de novo*. Plaintiffs assert that Council engaged in illegal contract zoning by (a) failing to consider all other permitted uses when zoning the Property to an "R-3" general use district; (b) failing to give independent consideration to the Application following its annexation of the Property; and (c) approving the Application based on SCDR's commitment to select the City as electrical service provider for the planned residential development. The Court disagrees.

First, Council's alleged failure to consider other permitted uses for the Property does not amount to illegal contract zoning. Instead, where, as here, a zoning authority is considering an application for conditional use zoning, "it is not necessary that property rezoned to a conditional use district be available for all of the uses allowed under the corresponding general use district." *Chrismon,* 322 N.C. at 625, 370 S.E.2d at 587.

Second, there is no evidence supporting Plaintiffs' contention that Council failed to give independent consideration to the arguments for and against the Application. While the City Attorney did advise the council members that SCDS's voluntary petition for annexation was contingent on approval of the conditional use permit for the planned residential development and that Council should not approve the annexation unless it also intended to approve the related permit, each decision remained within the

discretion of the council members, based on their consideration of the evidence presented at the hearing. As Plaintiffs have failed to demonstrate that Council abdicated its discretion to approve or deny any portion of the Application, the Court rejects this argument.

Finally, the evidence of record does not support Plaintiffs' contention that the parties bound themselves with respect to a contract for electrical services or made any other bilateral commitments. "Illegal contract zoning properly connotes a transaction wherein both the landowner who is seeking a certain zoning action and the zoning authority itself undertake reciprocal obligations in the context of a *bilateral* contract." *Chrismon,* 322 N.C. at 635, 370 S.E.2d at 593. The evidence here showed only that that the developer intended to award the electrical distribution services contract to the City should its Application be approved. There is no evidence that the City made any assurances in return. Accordingly, the Court declines to find illegal contract zoning on these facts.

**11.     Council engaged in improper spot zoning.  (Am. Compl. ¶ 34.)**

This is an issue of law that the Court reviews *de novo.*   Spot zoning is defined as:

A zoning ordinance, or amendment, which singles out and reclassifies a relatively small tract owned by a single person and surrounded by a much larger area uniformly zoned so as to impose upon the small tract greater restrictions than those imposed upon the larger area, or so as to relieve the small tract from restrictions to which the rest of the area is subjected.

*Blades*, 280 N.C. at 549, 187 S.E.2d at 45.

In this case, assuming *arguendo* that a 349-acre tract of land owned by a group of landowners satisfies the definitional requirements of "spot zoning," I conclude that the City Council's zoning action was authorized under existing case law.

In North Carolina, spot zoning "may be valid or invalid depending upon the facts of the specific case." *Chrismon*, 322 N.C. at 626, 370 S.E.2d at 588. Applying the four factors set out in *Chrismon* to this case, the Court finds that:  (a) the Property at issue is a large tract and thus does not fit within the traditional scope of spot zoning; (b) the disputed zoning action is consistent with the City's existing comprehensive zoning plan, which proposes expanded residential development for the surrounding area;[7] (c) Council considered the negative effect of its zoning action on the adjoining landowners against the benefits to the entire community as a social, economic, and political unit, and determined that the collective benefits (in the form of the construction of a comprehensive, high-end planned residential development to meet the City's future growth projections) outweighed any such detriments; and (d) the proposed use is compatible with the residential uses already present in the adjoining tracts, albeit at a more substantial density than the Plaintiffs would prefer.

Accordingly, even if Council's zoning action in this case amounts to spot zoning, such action, under these facts, is valid.

## IV.
## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary Judgment as to the Plaintiffs' declaratory judgment action and **AFFIRMS** the zoning decisions made by the Gastonia City Council on January 17, 2006. Accordingly, the Court **DISMISSES** the Amended Complaint and Petition for Writ of Certiorari **with prejudice**. The Court **DENIES** the request of the Defendant and Intervenor-Defendant for recovery of attorneys' fees and costs.

This the _____ day of October, 2006.

---

[1] Under the County's zoning scheme, SCDS would be authorized to develop a residential community, albeit with more substantial restrictions regarding the density of individual dwellings per acre. More specifically, the current county zoning ordinance would allow for the construction of approximately 600 single-family homes on 12,000 square foot lots.

[2] SCDS later withdrew its zoning request with respect to that portion of the Property originally within Gastonia's city limits.

[3] Approval of a conditional use district provides for those situations where a particular use (in this case, the development of a planned residential development) may be appropriate for a particular site, but where the general zoning district (here, "R-3") has insufficient standards to mitigate the specific impact on surrounding areas. *See* Gastonia, N.C., Code § 17-291.

[4] The Chair of the planning commission testified that the Application before Council was not the same one considered by the commission members, in that SCDS had addressed many of the concerns raised by the initial proposal. The Chair also testified that, in the absence of a planned development, the landowners would likely proceed with construction of homes on the Property.

[5] Although it does not address specific residential densities or outline criteria regarding timing of any annexation, the City's comprehensive land use plan does recommend residential development for the area.

[6] Plaintiffs also assert that Council inappropriately considered matters not part of the record in approving the Application. Plaintiffs do not, however, identify the matters improperly considered. Consequently, the Court declines to consider this issue further.

[7] In that sense, this case is markedly different from *Good Neighbors of South Davidson v. Town of Denton,* 355 N.C. 254, 559 S.E.2d 768 (2002), where the North Carolina Supreme Court concluded that the defendant town engaged in illegal spot zoning, in part, because there was no evidence that the proposed zoning change was compatible with an existing comprehensive zoning plan and the planned industrial use was clearly incompatible with the residential and agricultural uses of the surrounding property.