TEMPLETON PROPERTIES LP, Petitioner
v.
TOWN OF BOONE and TOWN OF BOONE BOARD OF ADJUSTMENT, Respondents
No. COA08-1237
Court of Appeals of North Carolina
Filed July 21, 2009
This case not for publication
Di Santi Watson Capua & Wilson, by Anthony S. di Santi, for petitioner.
Parker, Poe, Adams, & Bernstein L.L.P., by Anthony Fox & Benjamin Sullivan, for respondents.
WYNN, Judge.
"Whole record" review of a Board of Adjustment decision requires the Superior Court to determine "whether the findings of fact are supported by competent evidence in the record; if so, they are conclusive upon review."[1] Respondents Town of Boone and its Board of Adjustment argue the Superior Court incorrectly applied whole record review to the Board of Adjustment's decision to deny a special use permit. Because the Superior Court's order shows that it reviewed the Board of Adjustment's factual determinations under an incorrect standard of review, we remand to the Superior Court with instructions to remand to the Board of Adjustment for reviewable findings of fact.
Petitioner Templeton Properties, L.P. owns a 2.907-acre lot ("the Parcel") located in Boone, North Carolina. Although the Parcel is zoned for single-family residential use, the structure located on the Parcel has historically been used as a church with a special use permit. The Parcel is situated between State Farm Road and VFW Drive, which are the routes of access to the Parcel. Aside from a VFW (a nonresidential structure) located on the lot immediately north of the Parcel, the surrounding neighborhood is composed of mostly single-family residences.
On 28 September 2006, Petitioner submitted an application to the Town of Boone for a special use permit to remodel the church into a 13,050 square foot medical clinic. When Petitioner submitted its application, the proposed medical clinic was permissible in the residential zoning district with a special use permit. The Board of Adjustment found Petitioner's original application for a special use permit incomplete based on the "lack of lighting and dumpster plans and no clear resolution of an easement."
Petitioner filed a modification renewing its special use permit application on 2 March 2007. The renewed application proposed a clinic of 10,010 square feet and attempted to address the lighting, dumpster, and easement concerns supporting the Board of Adjustment's earlier finding that the application was incomplete. Hearings on Petitioner's renewed special use permit application occurred on 5 April and 1 May 2007. In the interim, the Town of Boone amended its zoning ordinance to eliminate the possibility of medical clinics of any size with or without a special use permit, but Petitioner's application was considered under pre-amendment policy.
At the hearings, Board members heard evidence from many witnesses, including residents of the community surrounding the proposed medical clinic. The proposed clinic would require twenty to twenty-five more parking spaces than the church. In addition to the parking concerns, residents worried that the medical clinic generally would clog access routes on State Farm Road and VFW Drive by generating more traffic, on a more consistent basis, than the existing church. Witnesses were generally in accord that additional clinic traffic would further overwhelm State Farm Road and VFW Drive, particularly during rush hours. Some residents were concerned that emergency vehicles would be unable to access neighborhood residences.
Residents were also commonly concerned about the proposed medical clinic's aesthetic impact on the surrounding residential community. Several residents expressed dissatisfaction with the trees and foliage the proposed clinic would eliminate. Some residents cited the value of the trees, some being century-old maples and oaks, while other residents stated that the trees and foliage served as a buffer between their residences and the proposed clinic's increased lighting and noise. Other residents were further displeased that the proposed clinic's increased waste would require additional dumpsters, potentially drawing rodents and other animals to the neighborhood. While the clinic plans called for waste collection by the same garbage truck serving the residential neighborhood, a "dumpster turn" would be installed to allow the garbage truck to access the clinic's dumpsters, which could be as few as two and as many as ten. The Town of Boone's Mayor, Loretta Clawson, was particularly concerned that the "dumpster turn" would devalue her house, located directly across from the proposed clinic on VFW Drive.
On the other hand, Petitioner introduced evidence that the greater area includes a substantial number of commercial and medical entities, even though the most immediate properties are single-family residences. Petitioner also introduced an appraiser's report stating that the proposed medical clinic would not decrease surrounding residential property values, and moreover, that the topography and road grade of State Farm Road would preserve neighboring residents' privacy.
After the hearings, the Board of Adjustment voted on the application according to the mandated procedures in the Town of Boone's Unified Development Ordinance. The Board of Adjustment voted (1) unanimously, in favor of a motion that Petitioner's application was complete; (2) unanimously, approving a second motion that Petitioner's application complied with all applicable requirements of the Unified Development Ordinance; and (3) five to three opposing a motion to "grant the Special Use Permit subject to. . . restrictions against a substance abuse clinic . . . a mental health facility and restricting it to the hours of the seven until nine o'clock."
Some Board members offered their rationales for voting against the proposal before adjourning on 1 May. Board member Crepeau stated that his vote in opposition was "based on [the clinic's] incompatibility with the Comprehensive Plan. . . . I am placing paramount importance on the residential and continuing residential nature of the neighborhood, and that if this were approved, that this could actually begin the transition of this established, long-established residential neighborhood into something that is no longer residential." Board member Hay agreed with Board member Crepeau, and further stated that "the congestion would be a serious safety concern as well at certain times of the day." Board member Lockett agreed with the traffic safety concern, and also stated: "The expansion to the degree that it would be expanded did not seem to be in keeping with the residential quality of the neighborhood. I do understand that there are medical facilities along State Farm, but that portion of State Farm seems to be primarily single family and to have a character that would be significantly adversely impacted in terms of preserving that [residential] use and character." The hearing adjourned after the Board of Adjustment members' comments.
On 4 May 2007, the Town of Boone informed Petitioner of the hearing's results in a letter stating:
After hearing all input from the applicant and members of the public; a motion was made to approve the project. This motion was not approved by a vote of three ayes and five nays. No other motions were offered. The result of this vote was that the application was denied.
The letter also recapitulated Board members' reasons for voting against the application.
In a letter dated 8 May 2007, Petitioner responded that the Town of Boone was "incorrect that the result of [the Board of Adjustment's third] vote was that the application was denied. The result of this vote is that the conditions that the applicant proposed were not imposed by the Board of Adjustment." Petitioner's letter cited provisions of the Unified Development Ordinance regarding the Board of Adjustment's voting procedures and concluded: "The result of the [first two] unanimous votes of the Boone Board of Adjustment was that the application was approved as a matter of law. The Town of Boone is required to issue the Special Use Permit for the development of the Templeton Medical Clinic which was granted by the Boone Board of Adjustment's actions on May 1, 2007."
In response, the Town of Boone notified Petitioner by letter of a "Continuation Meeting" scheduled by the Board of Adjustment for 21 May 2007 in light of Petitioner's position concerning the result of the Board of Adjustment's 1 May votes. However, Petitioner filed a Petition for Writ of Certiorari in the Superior Court on 18 May 2007 that did not mention the Continuation Meeting scheduled for 21 May. The Superior Court granted a writ of certiorari on the morning of 21 May 2007, before the Board of Adjustment's Continuation Meeting.
The Town of Boone proceeded with the Continuation Meeting as scheduled, but Petitioner did not appear. The Board of Adjustment members reconvened and discussed their understanding of the conclusion of the 1 May hearing, and Petitioner's subsequent position. One Board member disapproved of the Continuation Meeting, citing Petitioner's absence, and abstained from any action. The remaining Board members, referencing section 69(c) of the Unified Development Ordinance, moved to deny Petitioner's application "based on the fact that the proposal would not be in harmony with the area in which it is to be located, and will not be in the general conformity with the Comprehensive Plan." Three Board members voted in favor of that motion, two voted in opposition, and one abstained. No written findings of fact or conclusions of law from any of the Board of Adjustment's hearings appear in the Record on Appeal.
The Superior Court heard argument on Petitioner's writ of certiorari on 30 June 2008. At the end of the hearing, the judge reserved his ruling and announced that he planned to visit the site of the proposed clinic personally.[2] In its order, the Superior Court made fifteen findings of fact, and the following relevant conclusions of law:
2. When the [Town] voted by a unanimous vote on May 1, 2007 that [Petitioner's] application was complete, and voted by a unanimous vote that [Petitioner's] application complied with the UDO, a prima facie case of harmony with the area was established. Once the prima facie case was established by [Petitioner], the [Town] could have denied [Petitioner's] application that it would not be in harmony with the area only if it made findings of fact sufficient for this Court to review the basis of the decision so that this Court determine that the denial of the permit was based upon competent, material and substantial evidence to support such a finding. (Citations omitted).
3. A review of the whole record establishes that [Petitioner's] proposed renovation of an existing church into a medical clinic that will be in harmony with the area in which it is located and will be in general conformity with the Comprehensive Plan of the Town of Boone is supported by competent, material and substantial evidence.
4. A review of the whole record establishes that the [] Town of Boone Board of Adjustment, made errors in law, did not follow the procedures specified by law in both the General Statutes of North Carolina and the UDO, did not insure that appropriate due process rights of the Petitioner were protected, did not make its decision based upon competent, material and substantial evidence, and made an arbitrary and capricious decision in denying [Petitioner's] application for a special use permit.
Accordingly, the Superior Court reversed the Board of Adjustment's denial of Petitioner's application, and ordered the Town of Boone to issue the special use permit.
On appeal from that order, the Town of Boone and the Board of Adjustment argue that the Superior Court erred by reviewing factual issues de novo. We agree.
In reviewing the Board of Adjustment's decision to deny Petitioner's special use permit application, the Superior Court sat as an appellate court, not as a trial court. Batch, 326 N.C. at 11-12, 387 S.E.2d at 662. "In proceedings of this nature, the superior court is not the trier of fact. Such is the function of the town board." Coastal Ready-Mix Concrete, Inc. v. Board of Com'rs of Town of Nags Head, 299 N.C. 620, 626, 265 S.E.2d 379, 383 (1980). Accordingly, "[t]he [superior] court may not substitute its findings of fact for those of the agency." Batch, 326 N.C. at 11-12, 387 S.E.2d at 662 (citing Jamison v. Kyles, 271 N.C. 722, 157 S.E.2d 550 (1967)).
Instead, "it is clear that the task of a [superior] court reviewing a decision on an application for a conditional use permit made by a town board sitting as a quasi-judicial body includes:"
(1) Reviewing the record for errors in law,
(2) Insuring that procedures specified by law in both statute and ordinance are followed,
(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,
(4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and
(5) Insuring that decisions are not arbitrary and capricious.
Coastal Ready-Mix Concrete, Inc., 299 N.C. at 626, 265 S.E.2d at 383. In performing these functions, the Superior Court's standard of review depends upon the nature of the issues raised. Although the Superior Court may review challenged errors of law de novo, whole record review is required where "the petitioner correctly contends that the agency's decision was either unsupported by the evidence or arbitrary and capricious . . . ." Tucker v. Mecklenburg County Zoning Bd. of Adjustment, 148 N.C. App. 52, 55, 557 S.E.2d 631, 634 (2001), aff'd in part per curiam, 356 N.C. 658, 576 S.E.2d 324 (2003). The Superior Court's task in applying the whole record test is to determine "whether the findings of fact are supported by competent evidence in the record; if so, they are conclusive upon review." Batch, 326 N.C. at 11-12, 387 S.E.2d at 662 (citations omitted).
There was substantial evidence before the Board of Adjustment supporting and opposing the special use permit to build the proposed medical clinic. However, neither the transcripts of proceedings before the Board of Adjustment nor any of its letters to Petitioner indicate the facts the Board of Adjustment ultimately found. Indeed, transcripts from the 1 May 2007 hearing and the 21 May 2007 Continuation Meeting show that a majority of the Board of Adjustment Members intended to deny the special use permit, but the facts underlying those Board members' decisions are nowhere evident.
The Superior Court was not free to find facts in place of the Board of Adjustment; its function was to determine whether the Board of Adjustment's findings were supported by competent evidence in the record before it. Id. Since there were no factual findings in the record for the Superior Court to review, that court should have remanded to the Board of Adjustment for reviewable findings of fact. See Ward v. Inscoe, 166 N.C. App. 586, 591, 603 S.E.2d 393, 397 (2004) (observing this Court's previous remand to the Superior Court for remand to Board of Adjustment for appropriate findings of fact and finding no due process violation where Board reheard evidence on remand to make ordered findings); Crist v. City of Jacksonville, 131 N.C. App. 404, 405-06, 507 S.E.2d 899, 900 (1998) (remanding to superior court with instructions to remand to the Board of Adjustment for findings of fact); see also Humble Oil & Refining Co. v. Bd. of Aldermen of Town of Chapel Hill, 284 N.C. 458, 471, 202 S.E.2d 129, 138 (1974) (the Board of Adjustment should "state the basic facts on which it relied with sufficient specificity to inform the parties, as well as the court, what induced its decision"). Accordingly, we remand to the Superior Court with instructions to remand to the Board of Adjustment for reviewable findings of fact.
In light of our decision to remand for adequate factual findings, we do not address the remaining arguments on appeal. If there are further proceedings after remand to the Board of Adjustment, the Superior Court should review the entire record of proceedings before the Board of Adjustment, including its actions in the Continuation Meeting. Batch, 326 N.C. at 11-12, 387 S.E.2d at 662.
Remanded.
Judges JACKSON and Robert N. HUNTER, Jr. concur.
Report per rule 30(e).
NOTES
[1] Batch v. Town of Chapel Hill, 326 N.C. 1, 11-12, 387 S.E.2d 655, 662 (1990) (citing Jamison v. Kyles, 271 N.C. 722, 157 S.E.2d 550 (1967)).
[2] Although it is undisputed that the judge stated an intention to visit the site, there is no evidence in the Record on Appeal to show whether this visit actually occurred.